STATE OF NORTH CAROLINA v. GEORGE R. KORNEGAY, JR.

No. 500PA84

(Filed 27 February 1985)

1. **Searches and Seizures § 2— search by a private party**

When a private party has engaged in a search and has seized property or information, the protections of the Fourth Amendment apply only if the private party in light of all the circumstances of the case must be regarded as having acted as an instrument or agent of the State.

2. **Searches and Seizures § 2— private search—subsequent involvement of government agents**

Once a private search has been completed, subsequent involvement of government agents does not transform the original intrusion into a governmental search, and mere acceptance by the government of materials obtained in a private search is not a seizure so long as the materials are voluntarily relinquished to the government.

3. **Searches and Seizures § 2— defendant's business records—copies furnished to State by secretary—no unreasonable search and seizure**

In a prosecution of an attorney for embezzlement, false pretense and corporate malfeasance, a secretary in defendant's law office was not acting as an agent of the State when she handed over copies of defendant's business and personal records to the S.B.I. prior to the issuance of a search warrant, and the copied records were thus not obtained through an unreasonable search and seizure conducted by the State or its agents, where the trial court found that the secretary acted entirely on her own and for the purpose of protecting herself when she made the copies of defendant's records and that she voluntarily turned these records over to the S.B.I. and the district attorney. The mere fact that the secretary was given immunity from prosecution does not indicate that she was coerced into giving copies of the records to the State where there was no evidence that she was charged or would be charged with a crime.

1

4. **Searches and Seizures § 22— probable cause for search warrant**

When the facts as set forth in the supporting affidavit would lead a reasonable man of prudence and discretion to believe that the offense charged has been committed, there is probable cause sufficient to support the issuance of a search warrant.

5. **Searches and Seizures § 23— affidavit for search warrant—probable cause to believe crime committed**

An affidavit was sufficient to establish probable cause to believe that a search of the records of a law firm and defendant's personal records would reveal that defendant had fraudulently misappropriated corporate funds of the law firm, embezzled trust account funds and obtained money from a client by false pretense or embezzlement.

6. **Searches and Seizures § 31— search warrant—item to be seized—facts establishing probable cause in another portion of warrant**

It was immaterial that statements charging a specific offense and facts establishing probable cause were not included in the particular portion of an affidavit attached to a search warrant designating a law firm's savings account passbook as an item to be seized where other portions of the affidavit established probable cause to believe that the passbook would tend to show that defendant had fraudulently converted or embezzled the interest on $100,000 belonging to a client.

7. **Searches and Seizures § 31— search warrant—description of items to be seized**

Warrants which do not specify items to be searched for or persons to be arrested and which are not supported by showings of probable cause that a particular crime has been committed are general warrants banned by the Fourth Amendment to the U. S. Constitution and Art. I, § 20 of the N. C. Constitution.

8. **Searches and Seizures § 31— search warrant—description of items to be seized**

A warrant describes items with sufficient particularity when it enables the officer executing the warrant reasonably to ascertain and identify the items to be seized. However, the degree to which a warrant must particularly describe the items to be seized depends on the nature of the items, and a description of property is sufficient when it is as specific as the circumstances and nature of the activity that is under investigation permit.

9. **Searches and Seizures § 31— search warrant—description of items to be seized—business records**

When the State is aware that certain business records relating to a crime exist but cannot give their precise titles or quantity, neither the Fourth Amendment of the U. S. Constitution nor Art. I, § 20 of the N. C. Constitution requires that the warrant enumerate each individual paper.

10. **Searches and Seizures § 30— search warrant—description of place and items—attached applications as part of warrants**

Although search warrants did not state specifically that the applications were incorporated by reference, applications attached to the warrants were a

State v. Kornegay

part thereof where each warrant clearly stated that the location of the place to be searched and the description of the items to be seized were set forth in the application attached to it.

**11. Searches and Seizures § 31— search warrant—description of items to be seized**

Description of items to be seized, including directions to seize all checkbooks, cancelled checks, deposit slips, bank statements, trust account receipts, check stubs, books and papers which would tend to show a fraudulent intent or any elements of the crime of false pretense or embezzlement, was as specific as the circumstances and nature of defendant attorney's activities permitted and was sufficiently particular to meet the requirements of the Fourth Amendment to the U. S. Constitution and Art. I, § 20 of the N. C. Constitution, where many of the crimes with which defendant was charged were accomplished by numerous transfers of monies between the trust account of a law firm, the law firm's operating account, and defendant's personal account, and in many instances the State was only aware that funds had been diverted from client trust accounts or had not been deposited in the firm's operating account.

**12. Judges § 3; Searches and Seizures § 28— search warrants—issuance by emergency judge—opening of court—presumption of regularity**

Defendant failed to show that search warrants were invalid on the ground that the emergency judge who signed them had not opened court at the time he issued the warrants in chambers since defendant's evidence that no one was seen in the courtroom, no files were prepared to be sent to court by the clerk's office, the judge did not direct anyone to make notes of what transpired in court, and all proceedings occurred in the judge's chambers was insufficient to overcome the presumption of regularity of the acts of public officials and testimony by the district attorney and the clerk of court tending to show that the judge had opened court prior to issuing the search warrants.

**13. Indictment and Warrant § 8.4— pretrial election between offenses not required**

Charges against defendant for embezzlement and for malfeasance of a corporate agent constituted charges of separate and distinct offenses although the same funds were involved in both cases, and the trial court did not err in waiting until the close of all the evidence to require the State to make an election between the two offenses. G.S. 14-90; G.S. 14-254.

**14. Criminal Law § 26.5— double jeopardy—separate offenses—different elements**

When a defendant is charged in the same trial with separate offenses and each offense charged has an element different from any element of the other charged offense, considerations of double jeopardy do not arise.

**15. Criminal Law § 92.4— consolidation of charges against defendant**

The trial court did not abuse its discretion in granting the State's motion to join a false pretense charge against defendant attorney with charges against defendant for embezzlement of funds from his law firm and malfeasance of a corporate agent where the evidence showed that defendant's act

of obtaining $21,000 from a client by false pretense was part of his scheme to embezzle funds from his law firm. G.S. 15A-926.

**16. Corporations § 15.1; Embezzlement § 1.1 — malfeasance of corporate agent — attorney's depositing of legal fees in own account**

Defendant attorney's act of depositing legal fees in his own account rather than in the account of his law firm, a professional corporation, if done with the intent to injure, defraud or deceive another, was a violation of the malfeasance of corporate agents statute, G.S. 14-255(a), although defendant was the sole shareholder of the corporation, and associates in the law firm were properly permitted to testify that they had not authorized defendant to deposit legal fees generated by the corporation in his own account.

**17. Embezzlement § 4 — indictment — ownership of embezzled property**

An indictment alleging embezzlement or misappropriation of the property of another is not limited to alleging ownership in the legal owner but may allege ownership in anyone else who has a special property interest recognized in law.

**18. Embezzlement § 4 — special property interest in embezzled funds — no fatal variance between indictment and evidence**

An incompetent's wife had a special property interest in funds which had been recovered for the incompetent and deposited in a law firm's trust account so that there was no fatal variance between the evidence and an indictment charging defendant attorney with embezzlement of funds belonging to the wife "individually" where the evidence showed that the wife, as guardian ad litem for the incompetent, endorsed checks from an insurance company and authorized their deposit in the trust account of defendant's law firm; the wife had been paying the incompetent's bills and thus had a claim for reimbursement from the trust account; the wife was a "person in loco parentis" as defined by G.S. 35-1.7(20); and payments of the recovered funds were made at a time when the wife was acting pursuant to a power of attorney from her husband because of his incapacity. An allegation in the indictment that the funds belonged to the wife "as guardian ad litem" was irrelevant and will be treated as surplusage.

**19. False Pretense § 3.1 — attorney obtaining money from client — sufficiency of evidence to support conviction**

The evidence would support inferences that defendant attorney's misrepresentation to his client that a suit had been settled for $125,000 was calculated and intended to deceive the client and that the amount of $104,000 had been in fact agreed to on or before 27 April 1982 as alleged in the indictment so as to support defendant's conviction of obtaining $21,000 from his client by false pretense where the evidence tended to show: defendant and the attorney for the plaintiff in an action against defendant's client had agreed to a final settlement of $104,000 between 20 and 30 April 1982; on 27 April defendant advised his client that the suit had been settled for $125,000, and the client delivered to defendant that day a cashier's check made out to him for $125,000; on 28 April defendant caused a check to be issued to the attorney for the other party in an amount of $104,000 and delivered this check to the other attorney

on 3 May; and $104,000 was the only figure ever agreed on by the attorneys to settle the suit against defendant's client.

**20. Embezzlement § 5; Corporations § 15.1 — embezzlement from law firm — malfeasance of corporate agent — agreement by attorneys for sharing legal fees — attorneys' right to shares of corporate stock**

In a prosecution of defendant attorney for embezzlement of funds of a professional corporation and malfeasance of a corporate agent by misapplying funds, evidence of an agreement that all legal fees generated by defendant and his two associates would be property of the corporation and distributed pro rata was relevant to show the revenue to which the corporation was entitled. Furthermore, evidence that defendant's two associates were entitled to shares of the corporate stock was relevant to the determination of whether defendant had acted with criminal intent to defraud the corporation and the two associates by his diversion of legal fees and embezzlement of trust account funds.

**21. Embezzlement § 6.1; Corporations § 15.1 — embezzlement — malfeasance of corporate agent — instruction on corrupt intent**

In a prosecution for embezzlement and malfeasance of a corporate agent by misapplying funds, the trial court's instruction that the State must prove that "defendant wilfully, fraudulently and dishonestly used the money for some purpose other than that for which he received it" was adequate to inform the jury that they must find that defendant acted with a corrupt intent when he converted the monies in question, and the trial court did not err in refusing to give defendant's requested instruction on corrupt intent.

**22. False Pretense § 2 — attorney's misrepresentation of case settlement — precise date of settlement mere surplusage**

In a prosecution of defendant attorney for obtaining $21,000 by false pretense by telling a client that he had settled a case against her for $125,000 when the case had been settled for $104,000, it was only necessary for the State to prove that defendant had settled the case on or before 27 April 1982, the date on which defendant allegedly told the client the case had been settled for $125,000, and an allegation in the indictment that the settlement was completed on 14 April 1982 was mere surplusage and did not have to be proven.

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by defendant from *Martin, J.,* at the 3 October 1983 Criminal Session of Superior Court, WAYNE County.

The grand jury of Wayne County returned a bill of indictment charging defendant, a practicing attorney in Wayne County, with twenty-nine separate counts in the nature of embezzlement or false pretense. The trial court, however, submitted only three counts to the jury: count XVII: Embezzlement of $14,500 on or about 13 April 1982 of monies of a client, Carolyn Stallings (in-

dividually and as guardian ad litem for John J. Stallings, incompe-
tent) [a violation of G.S. 14-90]; count XXII: Obtaining $21,000
from Mrs. Estelle Sutton on or about 29 April 1982 by means of a
false pretense [a violation of G.S. 14-100]; count XXV: Malfeasance
as a corporate officer by the embezzlement of $6,000 on 27 April
1982 of monies belonging to Kornegay, Rice and Edwards, P.A. [a
violation of G.S. 14-254].

The State offered evidence tending to show that in 1979 Mrs.
Estelle Sutton was involved in an automobile accident in Sampson
County in which she was seriously injured. Mr. Seals, the occu-
pant of the other car involved in the accident, died as a result of
injuries received in the collision. While she was still in the
hospital, Mrs. Sutton, a 72-year-old widow, sent for Mr. Kornegay
to talk to him about representing her in the criminal matters
pending against her in which she was charged with the death by
motor vehicle and failure to yield the right of way. After con-
sulting with Mrs. Sutton defendant Kornegay advised her that he
would charge her $3,500 for this appearance in criminal court and
at that time obtained an authorization from her to investigate her
financial condition. After making this investigation, he thereafter
told Mrs. Sutton that his fee would be $5,500. Mrs. Sutton attend-
ed the trial on the day that she was discharged from the hospital.
The court dismissed the charge of death by motor vehicle and a
satisfactory plea bargain on the charge of failure to yield the
right of way was arranged. On the day of the trial Mrs. Sutton
paid defendant his fee of $5,500.

During their trip home, Mr. Kornegay advised her that she
would probably be sued in a civil action. Several months later she
received the summons and complaint in the civil action and car-
ried them to Mr. Kornegay's office. At trial her insurance com-
pany, which had a liability of only $25,000, retained Mr. I. Edward
Johnson of Raleigh, North Carolina. Defendant Kornegay was re-
tained by Mrs. Sutton to represent her for liability in excess of
coverage. Mrs. Sutton did not attend the civil trial because of ill-
ness and was advised by defendant Kornegay that the jury had
returned a verdict against her in excess of $200,000 and that he
had given notice of appeal. At that point, Mrs. Sutton paid Mr.
Kornegay $10,000 for his representation in the civil action.

After some months, Mr. Kornegay obtained a settlement in the matter and he told Mrs. Sutton that the agreement was "to pay the Seals' estate $125,000." He then instructed her to bring him two checks: one in the amount of $125,000 in settlement of the Seals suit and the other in the amount of $6,000 to finish paying his legal fee. On 27 April 1982 Mrs. Sutton delivered the checks to a secretary in Mr. Kornegay's office. Several weeks later she called Mr. Kornegay and asked for something to show that the case was settled. She received a letter dated 1 June 1982 from Mr. Kornegay which in part read: "Pursuant to our telephone conversation, I am writing you this letter to tell you that your case has been settled. As you know, we paid $125,000 to them in full settlement of this matter. As I told you, the judgment against you was recorded in four counties which includes Wayne, Duplin, Johnston and Sampson. It will take some time to get this settled. You do not have anything to worry about." At her request, Mr. Kornegay wrote her a letter in which he stated: "This is to advise you that you have paid my fees in full concerning the wreck." There was no specification as to the exact amount of the legal fees nor as to how these fees were determined.

In October 1982 Mrs. Sutton was contacted by the S.B.I. and at that time she learned that defendant Kornegay had retained $21,000 from the $125,000 check which she had delivered to him for settlement of the judgments against her in favor of the Seals estate. She testified that she had never authorized defendant Kornegay to take any money out of the $125,000 check for himself or his law firm.

In January 1982 the law firm of Kornegay, Rice and Edwards, P.A. opened an office in Kenansville, North Carolina where Mrs. Diane Grubbs was employed as secretary, bookkeeper and receptionist. That office kept two bank accounts in the Bank of North Carolina, N.A., Kenansville. One account was a firm trust account and the other was the firm's operating account. The first money received by Mrs. Grubbs was a $5,000 check from State Farm Insurance Company payable to Carolyn Stallings, and she thereafter received a $25,000 check payable to Carolyn Stallings. Mrs. Stallings endorsed both checks and Mrs. Grubbs deposited them in the firm's trust account in Kenansville. On 8 March 1982, upon Mr. Kornegay's instructions, she wrote checks on the firm's trust account as follows: Carolyn T. Stallings —

$3,000.00; T. LaFontine Odom—expenses $469.48; Bernard I. Scherer—attorney's fee $3,000.00; T. LaFontine Odom—attorney's fee $4,200.00 and George R. Kornegay—attorney's fee $3,000.00. Messrs. Odom and Scherer were attorneys of Charlotte, North Carolina who had associated defendant Kornegay in the trial and settlement of claims which grew out of a personal injury Mrs. Stallings' husband had suffered when struck by an automobile operated by Bruce Blanton, Jr.

Several months later Mrs. Grubbs noted that Mr. Kornegay had written a check in the amount of $14,525 to one Ray Amon from the trust account which then contained only money belonging to Carolyn Stallings. In October 1982 police officers came to the office and obtained records from Mrs. Grubbs, including the trust account cards. Several weeks thereafter defendant Kornegay gave her cash to put in the trust account and she thereafter prepared a check in the amount of $16,280.25 payable to Attorney Odom of Charlotte, North Carolina. There was also evidence that at about this time defendant had borrowed $50,000 from Mr. E. J. Pope, Jr. who received as security stock in the Mount Olive Nursing Home.

The State also presented testimony through Mr. Joseph Marion, an attorney who represented the Seals estate. He testified that on 5 May 1982 he received a check dated 28 April 1982 from defendant Kornegay in the amount of $104,000 in full settlement of the claim against Mrs. Sutton. This settlement had been reached "about the last week or ten days of April 1982."

Ray Amon testified that he is a used car dealer in Mount Olive and that he sold certain property to Mr. Kornegay for $100,000. Amon stated that he received a down payment in the amount of $16,000 which was written on the trust account of the firm of Kornegay, Rice and Edwards, P.A. Mr. Kornegay paid him the second installment of $14,000 by another check drawn on the firm's trust account. He testified that he knew nothing about Carolyn Stallings or her case and that he received no further payment from defendant Kornegay on the note.

Mrs. Elnora Whetsell, who was a secretary in the Mount Olive office of the firm of Kornegay, Rice and Edwards, P.A., testified that she noticed some unusual transactions in the office and in 1981 began copying records and taking them home. She

told no one but her husband what she was doing. She stated that "the reason I took those copies home with me was because he [Kornegay] had been very dishonest and when something dishonest happened then I said well what kind of position can I eventually get in and I took the copies home strictly to protect myself." In 1982, after conferring with Judge Michael Bruce, Attorney Edwards and Attorney Rice, she did copy additional papers but did so without the knowledge of any of these people or of defendant Kornegay. After a search warrant was issued in October, she left the law firm. She testified that defendant Kornegay deposited $6,000 belonging to the firm into his personal bank account. She also corroborated the testimony of the witness Amon to the effect that Kornegay wrote checks on the trust fund to Amon, and at that time there was no money in the trust fund which belonged to Mr. Amon. Checks to Amon were down payments and subsequent payments on a debt against the Ramblewood Corporation in which defendant Kornegay owned stock.

The State offered other evidence from Attorney Rice in the nature of corroboration.

Defendant offered no evidence.

The jury returned verdicts of guilty as charged on all three counts. The trial judge pronounced judgment as follows: count XVII—Embezzlement, the court sentenced defendant to imprisonment for eighteen months and recommended work release privileges; count XXII—False Pretense, the court imposed a sentence of imprisonment for a term of thirty months and recommended work release upon condition that defendant make restitution to Estelle Sutton in the amount of $21,000; count XXV—malfeasance by a corporate officer, defendant was sentenced to thirty months imprisonment to begin at the expiration of the sentences imposed in count XVII and XXII. The execution of this sentence was suspended and the defendant was placed on supervised probation for a period of three years. The trial judge also disbarred defendant from the practice of law and profession as an attorney in the State of North Carolina. Defendant appealed to the North Carolina Court of Appeals and we certified the case for discretionary review *ex mero motu* prior to a determination by the Court of Appeals pursuant to N.C.G.S. § 7A-31(a) and Rule 15(e)(2).

*Rufus L. Edmisten, Attorney General, by Donald W. Stephens, Special Deputy Attorney General and Christopher P. Brewer, Assistant Attorney General, for the State.*

*Hulse & Hulse, by Herbert B. Hulse and Duke & Brown, by John E. Duke, for defendant-appellant.*

BRANCH, Chief Justice.

I.

Defendant assigns as error the court's denial of his motion to suppress the documentary evidence that agents of the State Bureau of Investigation obtained from Elnora Whetsell prior to the issuance of search warrants. Defendant contends that when Mrs. Whetsell, without a warrant, handed over copies of his business and personal records to the State that she was acting as an agent of the State and thereby violated his right to be free from unreasonable searches and seizures under the fourth and fourteenth amendments to the United States Constitution. We hold that Mrs. Whetsell was not acting as an agent of the State and that defendant's constitutional rights were not violated.

[1, 2] When a private party has engaged in a search and has seized property or information, the protections of the fourth amendment apply only if the private party "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the State." *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). Once a private search has been completed, subsequent involvement of government agents does not transform the original intrusion into a governmental search. *United States v. Sherwin*, 539 F. 2d 1, 6 (9th Cir. 1976). Mere acceptance by the government of materials obtained in a private search is not a seizure so long as the materials are voluntarily relinquished to the government. *Coolidge*, 403 U.S. at 488-89; *United States v. Ziperstein*, 601 F. 2d 281, 289 (7th Cir. 1979), *cert. denied*, 444 U.S. 1031 (1980); *Sherwin*, 539 F. 2d at 7-8. The fact that private parties are subject to forces which encourage them to aid law enforcement officials does not alone render their actions involuntary. *Sherwin*, 539 F. 2d at 8.

[3] The trial court found as a fact that Mrs. Whetsell acted entirely on her own and for the purpose of protecting herself when

she made the copies of defendant's records that were later turned over to the S.B.I. This finding is supported by competent evidence and is binding on appeal. *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E. 2d 540, 548 (1982). Defendant does not challenge this finding, but argues that Mrs. Whetsell did not act voluntarily when she turned the records over to the State because she had intended to give the records to the State only if that was necessary to protect herself from charges of wrongdoing. Defendant further argues that the records were given in exchange for a grant of immunity from prosecution by the district attorney which made Mrs. Whetsell an instrument of the State. An examination of the facts shows that Mrs. Whetsell was not an agent of the State and that her act of turning the copied records over to the S.B.I. was wholly voluntary.

Mrs. Whetsell had expressed her concerns about defendant's conduct to his law partners, Robert Rice and John Edwards, on a number of occasions. In the summer of 1982 she had twice attempted to bring the matter to Judge Bruce's attention. When Judge Bruce called her on 21 September 1982 she did not hesitate to inform him of the information she had and willingly attended a meeting with him, Robert Rice and John Edwards on 26 September 1982. Mrs. Whetsell testified that Judge Bruce indicated that he had a duty to report what he knew about defendant's conduct and that she as well as the others present at the meeting had agreed. Following their meeting with the district attorney on 27 September 1982, defendant's partners and Judge Bruce stopped at Mrs. Whetsell's house, informed her that a meeting with the district attorney and S.B.I. agents had been scheduled for 28 September 1982 and told her to attend. It was at that time that Mrs. Whetsell told them about the records she had copied. Mrs. Whetsell also expressed to Judge Bruce and defendant's partners her fear that she might be held liable for the discrepancies in the trust account records. At the start of the meeting of 28 September 1982 the district attorney granted Mrs. Whetsell immunity from prosecution. She then turned the copied records over to the district attorney. In the days before the search of the offices of Kornegay and Rice, P.A. Mrs. Whetsell met with the S.B.I. agents a number of times to interpret records for the agents and to inform them of where the originals were kept in defendant's offices. She also prepared a detailed handwritten statement.

These facts fully support the trial court's finding that Mrs. Whetsell was not coerced into giving her copies of defendant's records to the State. She volunteered information to John Edwards and Robert Rice about irregularities and acquiesced in the decision of Rice, Edwards and Judge Bruce to report their suspicions to the authorities. Obviously this act made it probable that her role as bookkeeper would be investigated. She had made the copies to protect herself, and once suspicions had been raised about the disposition of funds in the trust account, showing the records to the district attorney and explaining them was simply a logical extension of her original purpose in making the records. There is no evidence that Mrs. Whetsell was coerced into meeting with the district attorney or forced to turn over her records. The mere fact that she was given immunity from prosecution does not indicate coercion where there is no evidence that she was charged or would be charged with a crime. Mrs. Whetsell may have hoped that she would obtain a grant of immunity by cooperating with the district attorney, but this alone does not render her actions involuntary. *See United States v. Sherwin*, 539 F. 2d at 7, 8. The copied records given by Mrs. Whetsell to the State were not obtained through an unreasonable search and seizure conducted by the State or its agents and were properly admitted into evidence.

We note that Mrs. Whetsell continued to make copies of defendant's records after her meeting with the district attorney and the S.B.I. agents and later turned these copies over to the State. As the State did not use these copied records at trial or rely on them in its application for a search warrant, we do not deem it necessary to rule on whether or not Mrs. Whetsell acted as an agent of the State in procuring them.

Lastly, defendant contends that subsequent to her meeting with the district attorney Mrs. Whetsell had the Kenansville branch of the firm mail originals of check stubs to the Mount Olive office so that they would be available for seizure by officers executing the search warrant on 11 October 1982. Defendant relies on the fact that the envelope in which the stubs were found was postmarked 6 October 1982. However, Mrs. Whetsell testified that she requested the check stubs solely for the purpose of balancing her books and that the stubs, which were already in the Mount Olive office, may have been placed in a different envelope than they originally came in while she was balancing her books.

In any case, the date on which the stubs were mailed to the Mount Olive office is irrelevant. The Kenansville office was searched at the same time as the Mount Olive office so that discovery of the stubs was inevitable. *See Nix v. Williams*, --- U.S. ---, 104 S.Ct. 2501, 2510-11 (1984).

## II.

Defendant next assigns as error the trial court's denial of his motion to suppress evidence obtained through the execution of search warrants issued to Wayne County and to Wayne and Duplin Counties jointly on 11 October 1982. He argues that the warrants were not supported by showings of probable cause that any particular crime had been committed. He also contends that the warrants are fatally defective because they do not sufficiently specify the property to be seized or the crimes to which the property relates. After a careful review of the warrants and the documents attached to them, we hold that the warrants are sufficiently specific and that the applications for issuance of the warrants disclose probable cause to believe that the particular crimes listed had been committed by defendant.

## A.

[4] An affidavit is sufficient to establish probable cause if it "supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in apprehension or conviction of the offender." *State v. Reddick*, 291 N.C. 399, 406, 230 S.E. 2d 506, 511 (1976) (quoting *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied*, 414 U.S. 874 (1973)). When the facts as set forth in the supporting affidavit would lead a reasonable man of prudence and discretion to believe that the offense charged had been committed, there is probable cause sufficient to support the issuance of a search warrant. *State v. Campbell*, 282 N.C. 125, 129, 191 S.E. 2d 752, 755 (1972).

[5] The search warrants in question direct the seizure of various records tending to show that money was obtained with a fraudulent intent from the trust account of Kornegay, Rice and Edwards, P.A. The records were also pertinent to show that defendant had obtained money from Estelle Sutton by false pre-

tense and had embezzled funds from Estelle Sutton, and, or Kornegay, Rice and Edwards, P.A. While defendant was not named in the portion of the affidavit charging the offenses, other portions of the affidavit make it clear that defendant is the one accused of committing the offenses.

Defendant's position that there was insufficient evidence in the affidavit to show probable cause to believe that he had committed the offenses charged is untenable. The affidavit discloses that Mrs. Whetsell, Robert Rice, Judge Bruce and John Edwards had over a period of years, beginning in the fall of 1976, noticed numerous instances of defendant's improper handling of trust accounts of clients and funds of the professional association. Their examination of the firm's books revealed that defendant had withdrawn funds from trust accounts and from the firm's operating account without authorization in order to pay his creditors and had deposited fees generated by the firm into his personal account. On several occasions Mrs. Whetsell recounted having written checks drawn on Kornegay, Rice and Edwards, P.A. to defendant's creditors. Mrs. Whetsell and John Edwards were both aware that defendant, who had defended Estelle Sutton in a wrongful death suit, had advised her that the suit had been settled for $125,000 when in fact the settlement was for $104,000. Both had seen an unsigned copy of a letter dated 1 June 1982 from George R. Kornegay, Jr. to Estelle Sutton stating that the suit had been settled for $125,000. Mrs. Whetsell noted that Estelle Sutton paid $125,000 to Kornegay, Rice and Edwards, P.A. and that only $104,000 was paid to the estate of Roland H. Seals while defendant transferred $21,000 from the firm's trust account to the firm's operating account. This appears to have been done to make up a deficit of $21,500 in the operating account resulting from earlier transactions of the defendant. Mrs. Whetsell also stated that $6,000 paid to defendant by Estelle Sutton for legal services was deposited in defendant's personal account rather than the firm's operating account. The payment by Mrs. Sutton of $125,000 according to the terms of the letter and the fact that defendant only paid out $104,000 while transferring $21,000 to the firm's operating account is sufficient to establish probable cause to believe that defendant had informed Mrs. Sutton that the case was being settled for $125,000 in order to obtain $21,000 by false pretense. Mrs. Whetsell, Robert Rice, John Edwards, and to a

lesser extent, Judge Bruce, all had access to documents concerning defendant's financial dealings. The information obtained from each individual source tends to corroborate the others and when added to Mrs. Whetsell's copies of defendant's records is sufficient to establish the basis of knowledge and the veracity of Whetsell, Rice, Edwards and Bruce. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317 (1983). Any reasonable and prudent person faced with this evidence would have ample reason to conclude that a search of the records of Kornegay and Rice, P.A. and defendant's personal records would reveal that defendant had fraudulently misappropriated corporate funds, embezzled trust account funds and obtained money from Estelle Sutton by false pretense or embezzlement.

[6]  Defendant notes that the portion of the affidavit attached to the warrant issued to Wayne County directing the seizure of the law firm's savings account passbook on the account maintained at Southern Bank and Trust Company does not state how this item relates to a criminal offense or how its seizure will aid in the apprehension or conviction of anyone in connection with a criminal offense. Therefore, defendant argues that the passbook was not properly subject to seizure.

In making this argument defendant overlooks the statement in the affidavit attached to the warrant that Mrs. Whetsell knew that $100,000 had been taken from the trust account of Hope W. Wiggins and deposited in the savings account maintained by Kornegay, Rice and Edwards, P.A. at the Southern Bank and Trust Company in Mount Olive. The interest received on these funds for a three month period was retained in the firm's savings account. Obviously, this passbook would tend to show that defendant had fraudulently converted or embezzled the interest on the $100,000 from Hope W. Wiggins and so was properly subject to seizure. It is immaterial that the statements charging a specific offense and the facts establishing probable cause were not included in the particular portion of the affidavit designating the passbook as an item to be seized. The affidavit is to be considered as a whole in determining whether a specific offense was charged and whether probable cause has been shown to believe that seizure of the item would aid in the conviction of the offender. It is the better practice in drafting an affidavit to be used as part of a warrant to list together the crimes charged and the facts establishing probable

cause. The affidavit and warrants before us nonetheless are sufficient as written to meet the requirements of the law.

B.

[7-9] Warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Warrants which do not specify items to be searched for or persons to be arrested and which are not supported by showings of probable cause that a particular crime has been committed are general warrants banned by the fourth amendment to the United States Constitution and article I, section 20 of the North Carolina Constitution. A warrant describes items with sufficient particularity when it enables the officer executing the warrant reasonably to ascertain and identify the items to be seized. *United States v. Wuagneux*, 683 F. 2d 1343 (11th Cir. 1982), *cert. denied*, --- U.S. ---, 104 S.Ct. 69 (1983). However, the degree to which a warrant must particularly describe the items to be seized depends on the nature of the items. *Id.* at 1349. A description of property is sufficient when it is as specific as the circumstances and nature of the activity that is under investigation permit. *Id.* "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Andresen v. Maryland*, 427 U.S. 463, 480 n. 10 (1976). When complex white-collar crimes are under investigation it is often necessary for the State to assemble a "paper puzzle" from a mass of evidence. *Id.* In dealing with such a case the courts must give due consideration to the difficulty faced by the State in particularly describing each item of evidence sought and its relation to a specific crime. *See Andresen*, 427 U.S. 463; *Wuagneux*, 683 F. 2d 1343. In cases involving a complex scheme and numerous records the investigators executing a search warrant will have to exercise some discretion in separating innocuous material from incriminating evidence. *State v. Louchheim*, 36 N.C. App. 271, 279, 244 S.E. 2d 195, 201 (1978), *aff'd*, 296 N.C. 314, 250 S.E. 2d 630, *cert. denied*, 444 U.S. 836 (1979). This is especially true when the State is aware that certain business records relating to a crime exist but cannot give their precise titles or quantity. *See United States v. Zanche*, 541 F. Supp. 207, 209-10 (W.D.N.Y. 1982). In such cases the fourth amendment does not require that the warrant

enumerate each individual paper, *id.* at 210, and we do not interpret article I, section 20 of the North Carolina Constitution to require more particularity in warrants than does the fourth amendment as applied to the states through the fourteenth amendment.

[10] The affidavit of S.B.I. Agent Curtis L. Ellis is attached to both search warrants. The only difference in the two copies of the affidavit concern the identity of the place to be searched and the items to be seized. The Wayne County warrant directs the seizure of certain items from the offices of Kornegay and Rice, P.A. while the warrant issued to Wayne and Duplin Counties jointly concerns items located in the Kenansville office of the firm. Defendant contends that the warrants are general warrants because the search warrant forms issued by the superior court do not themselves describe the place to be searched or property to be seized but refer to the attached warrant applications. Defendant argues that the applications are not part of the warrants because the warrants do not state that the applications are incorporated by reference. This argument is without merit. Each warrant clearly states that the location of the place to be searched and the descriptions of the items to be seized are set forth in the application attached to it. It is not necessary that the warrants use the magic words "incorporated by reference" in order to make the attached application a part of the warrants. The clear import of the language used in the warrants is that the attached applications are part of the warrants. Search warrants are presumed to be regular when irregularity does not appear on the face of the record. *State v. Spillars*, 280 N.C. 341, 350, 185 S.E. 2d 881, 887 (1972). Defendant has offered no evidence to show that the applications were not in fact attached to the warrants and therefore has not rebutted the presumption of the warrants' regularity. *Id.*

[11] Defendant next asserts that when the search warrant applications are viewed as part of the warrants, the warrants still fail to describe particularly the property to be seized and in effect authorize the State to seize any type of record which may prove helpful. After examining the warrants and supporting affidavits, we hold that the warrants are sufficiently particular to meet the requirements of the fourth amendment and article I, section 20 of the North Carolina Constitution.

It is true that in several places the warrants direct the seizure of all checkbooks, cancelled checks, deposit slips, bank statements, trust account receipts, check stubs, books and papers, etc. which would tend to show a fraudulent intent or any elements of the crime of false pretense or embezzlement. In this case we hold that the description by the State of the items to be seized was as specific as the circumstances and nature of defendant's activities permitted. *United States v. Wuagneux*, 683 F. 2d 1343, 1349.

In the course of his law practice, defendant handled money for many clients and generated voluminous records. Many of the crimes with which defendant was charged were accomplished by numerous transfers of monies between the trust account of Kornegay, Rice and Edwards, P.A., defendant's personal account and the operating account of the professional association. Defendant's act of defrauding Kornegay, Rice and Edwards, P.A. was accomplished by his deposit of legal fees generated by the firm into his own account. In many instances the State was only aware that funds had been diverted from client trust accounts or had not been deposited in the firm's operating account. While the record is silent on this point we think it unlikely that Mrs. Whetsell, defendant's bookkeeper, had a photographic memory and, it is clear that she did not copy every document in defendant's accounting records. That being the case, it is unreasonable to believe that she, Judge Bruce, Robert Rice, or John Edwards could particularly identify every document or writing which would tend to show defendant's guilt. It is too much to expect the State to have fully charted defendant's tortuous trail of financial misdealings until his records had been secured for inspection. Otherwise, defendant would be able to shield himself behind the complexity of his schemes. *See Andresen v. Maryland*, 427 U.S. 463. The warrants and applications show the rough outline of defendant's activities which is all that can be reasonably expected from the State in a case of this nature. The fourth amendment and article I, section 20 of the North Carolina Constitution require no more.

## C.

Defendant contends that even if the warrants are technically correct they were improperly issued for other reasons.

First, defendant argues that certain copied records attached to the search warrant applications were obtained in violation of defendant's right to be free from unreasonable searches and seizures, rendering the evidence seized by execution of the search warrants inadmissible as being fruit of the poisonous tree. Inasmuch as we have already held that the records copied by Mrs. Whetsell were not obtained through an unreasonable search and seizure by the State or its agents defendant's argument is without merit.

[12] Second, defendant argues that the trial court erred in denying his motion to quash the search warrants on the ground that Emergency Judge Fountain had no authority to issue them. Defendant does not dispute the trial court's finding of fact that Judge Fountain had been duly assigned, pursuant to N.C.G.S. § 7A-46, to hold a special session of the Superior Court of Wayne County on 11 October 1982.

> An emergency judge duly assigned to hold the courts of a county or judicial district has the same powers in the district in open court and in chambers as the resident judge or any judge regularly assigned to hold the courts of the district would have, but his jurisdiction in chambers extends only until the session is adjourned or the session expires by operation of law, whichever is later.

N.C. Gen. Stat. § 7A-48 (1981). Defendant attacks Judge Fountain's authority to issue the warrants on the basis that the session of court had not begun because Judge Fountain had not opened court at the time he issued the warrants in chambers.

There is a presumption of regularity accorded the official acts of public officers. *State v. Watts*, 289 N.C. 445, 449, 222 S.E. 2d 389, 391 (1976). An appellate court will not assume error when none appears in the record on appeal, *State v. Phifer*, 290 N.C. 203, 212, 225 S.E. 2d 786, 792 (1976), *cert. denied*, 429 U.S. 1123 (1977), and the burden is on appellant to show error, *In re Moore*, 306 N.C. 394, 403, 293 S.E. 2d 127, 132 (1982).

At trial the State produced evidence tending to show that Judge Fountain had opened court prior to issuing the search warrants. District Attorney Donald Jacobs testified that Judge Fountain came by his office on 11 October 1982, and stated that he was

going upstairs to open the court. The Clerk of Superior Court for Wayne County testified that it was his impression that Judge Fountain had opened the court. Against the presumption of regularity and this evidence, defendant only offered evidence to the effect that no one was seen in the courtroom, no files were prepared to be sent to court by the clerk's office, Judge Fountain did not direct anyone to make notes of what transpired in court, and all proceedings occurred in Judge Fountain's chambers. Defendant produced no witnesses who could affirmatively state that Judge Fountain did not open court. This evidence is clearly insufficient to rebut the presumption of regularity and show that Judge Fountain did not open the session of court before issuing the warrants. Defendant's hypertechnical argument that Judge Fountain did not have the power to issue the warrants is without merit.

Lastly, in a related matter, defendant contends that the trial court erred in failing to suppress evidence obtained through use of orders for examination of records of Kornegay and Rice, P.A. directed to the Bank of North Carolina, N.A., Kenansville, North Carolina and Southern Bank & Trust Company, Inc., Mount Olive, North Carolina. Defendant concedes that the court had the authority to issue such orders under the rule of *In Re Superior Court Order*, 70 N.C. App. 63, 318 S.E. 2d 843 (1983), *disc. rev. allowed*, 312 N.C. 622, 323 S.E. 2d 926 (1984). Defendant's sole argument is that the orders were obtained through exploitation of prior unlawful searches and seizures so that any evidence obtained through them is fruit of the poisonous tree. Since we have already held that the State did not engage in any unlawful searches and seizures, defendant's argument is without merit.

III.

[13] Count XVII of the indictment charges defendant with the embezzlement of $14,525 from Kornegay, Rice and Edwards, P.A., John J. Stallings and Carolyn Stallings individually and as guardian ad litem for John J. Stallings, and count XXI charges him with the embezzlement of $6,000 from Kornegay, Rice and Edwards, P.A. Counts VIII and XXV charge defendant with malfeasance of a corporate agent by misapplying funds by embezzling the funds previously mentioned. Defendant contends that the trial

court erred in denying his pretrial motion to require the State to elect between the counts of embezzlement and malfeasance of a corporate agent. Defendant argues that allowing the State to duplicate charges prejudiced him by leading the jury to believe that he had committed two separate and distinct offenses. After examining the statutes we hold that two separate and distinct offenses were charged in each case and that the trial court did not err in waiting until the close of all the evidence to require the State to make an election between the offenses of embezzlement and malfeasance of a corporate agent.

In order for the State to prove that a defendant has embezzled money in violation of N.C.G.S. § 14-90 it must establish three distinct elements:

(1) that the defendant, being more than sixteen years of age, acted as an agent or fiduciary for his principal, (2) that he received money or valuable property of his principal in the course of his employment and by virtue of his fiduciary relationship, and (3) that he fraudulently or knowingly and willfully misapplied or converted to his own use such money or valuable property of his principal which he had received in his fiduciary capacity.

*State v. Pate*, 40 N.C. App. 580, 583, 253 S.E. 2d 266, 269, *cert. denied*, 297 N.C. 616, 257 S.E. 2d 222 (1979). The offense of malfeasance of a corporate agent is more complex and is defined as follows:

(a) If any president, director, cashier, teller, clerk or agent of any corporation shall embezzle, abstract or willfully misapply any of the moneys, funds or credits of the corporation, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or make any false entry in any book, report or statement of the corporation with the intent in either case to injure or defraud or to deceive any person, or if any person shall aid and abet in the doing of any of these things, he shall be punished as a Class G felon.

(b) For purposes of this section, "person" means a natural person, association, consortium, corporation, body politic, partnership, or other group, entity, or organization.

N.C. Gen. Stat. § 14-254 (1981).

The differences in the elements of these two offenses are significant: (1) A defendant charged with embezzlement must have received the property he embezzled in the course of his employment and by virtue of his fiduciary relationship with his principal. Under N.C.G.S. § 14-254 it is sufficient to show that a defendant as an agent or officer of a corporation abstracted or misapplied corporate funds. It need not be shown that he received such funds in the course of his employment. (2) A defendant charged with embezzlement must have intended to defraud his principal. By contrast, a defendant violates N.C.G.S. § 14-254 if he does any of the acts prohibited by the statute with an intent to defraud or deceive *any person*. (3) A defendant charged with embezzlement need not be an agent or fiduciary of a corporation. N.C.G.S. § 14-254 applies only to agents and officers of a corporation. (4) To be guilty of embezzlement a defendant must be sixteen or more years of age. There is no such age restriction in N.C.G.S. § 14-254. While not comprehensive, this list shows that the offenses in question are separate and distinct because each offense contains at least one element not found in the other. *See generally, State v. Brady*, 299 N.C. 547, 563, 264 S.E. 2d 66, 75 (1980); *State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982).

When two separate and distinct offenses happen to arise out of the same course of conduct a defendant may be charged with more than one offense. *State v. Ward*, 301 N.C. 469, 476, 272 S.E. 2d 84, 88 (1980). In such cases it is proper for the trial court to defer its decision on the necessity for an election until evidence has been introduced. *Id.; State v. Summrell*, 282 N.C. 157, 173, 192 S.E. 2d 569, 579 (1972). Defendant's reliance on *State v. Griffin*, 239 N.C. 41, 79 S.E. 2d 230 (1953) is misplaced. That case held that the trial court should have granted defendant's pretrial motion to require the State to elect between a charge of larceny and a charge of embezzlement. The Court reasoned that both charges were based on the same act, and as a matter of law defendant could not be guilty of both by the same act, the definitions of the two crimes being mutually exclusive. *Griffin*, 239 N.C. at 45, 79

S.E. 2d at 233. On the other hand, it is possible for a defendant to be guilty of both embezzlement and malfeasance of a corporate agent by the same act. For that reason the rule of *Griffin* does not apply to this case, and the decision to defer ruling on defendant's motion until the close of all the evidence was within the sound discretion of the trial judge. For the same reason it was not error for the trial court in making its opening comments to the jury to inform them that defendant was charged with two counts of malfeasance of a corporate agent in addition to two counts of embezzlement.

[14]  Before the case went to the jury the trial court required the State to elect between counts XVII and XVIII and between counts XXI and XXV. The State elected to proceed on counts XVII and XXV and the trial court then dismissed counts XVIII and XXI. At that point defendant moved to dismiss counts XVII and XXV on the grounds of double jeopardy. When a defendant is charged in the same trial with separate offenses and each offense charged has an element different from any element of the other charged offense, considerations of double jeopardy do not arise. *Brady*, 299 N.C. at 563, 264 S.E. 2d at 75. The trial court properly denied defendant's motion to dismiss counts XVII and XXV and to declare a mistrial.

## IV.

[15]  Prior to trial the trial court granted the State's motion to join the false pretense offense with the offenses of embezzlement and malfeasance of a corporate agent. Defendant assigns as error the granting of the State's motion and the denial of his motion to sever the false pretense offense.

"Two or more offenses may be joined in one pleading or for trial when the offenses, . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single plan or scheme." N.C. Gen. Stat. § 15A-926 (1983). The nature of the offense is a factor that may properly be considered in determining whether the acts or transactions on which the offenses are based were part of a single plan or scheme. *State v. Effler*, 309 N.C. 742, 751-52, 309 S.E. 2d 203, 209 (1983). "Motions to join for trial offenses which have the necessary transactional connection under G.S. 15A-926 are addressed to the discretion of the trial court and, absent a showing

of abuse of discretion, its ruling will not be disturbed on appeal."
*State v. Avery*, 302 N.C. 517, 524, 276 S.E. 2d 699, 704 (1981).

After examining the circumstances surrounding the three of-
fenses we conclude that the trial judge did not abuse his dis-
cretion in joining the offenses for trial. The common thread
connecting the crimes is defendant's shortage of ready cash in
April of 1982. An installment payment was due on the property
defendant had purchased from Ray Amon, and on or about the
thirteenth of April defendant removed $14,525 of the money cred-
ited to Carolyn Stallings from the trust account of Kornegay, Rice
and Edwards, P.A. in Kenansville to pay Mr. Amon. Apparently
in need of a fresh infusion of cash, defendant deposited the $6,000
check Estelle Sutton had sent to Kornegay, Rice and Edwards,
P.A. as payment for legal services rendered by the firm into his
own account. Since defendant had previously deposited checks
from Mrs. Sutton into his personal account which were intended
to cover legal fees in the amounts of $5,500 and $10,000 respec-
tively, the firm's operating account was short $21,500. According
to Elnora Whetsell the firm at that point had insufficient funds to
satisfy its salary and operating expenses in April. At that time,
27 April or 28 April 1982, defendant transferred the $21,000 re-
maining from the $125,000 Mrs. Sutton had paid him to settle her
lawsuit into the general operating account of Kornegay, Rice and
Edwards, P.A. The relationship between these transactions in-
dicates that defendant's act of obtaining $21,000 from Estelle
Sutton by false pretense was part and parcel of his scheme to
embezzle funds from his law firm. This evidence is more than suf-
ficient to support joinder of the offenses. Defendant's assignment
of error is overruled.

V.

[16] Defendant argues that the admission of testimony by John
Edwards and Robert Rice that they had not authorized him to de-
posit legal fees generated by the corporation in his own account
was error. Defendant contends that as sole shareholder of the cor-
poration he had the right to dispose of assets of the corporation
without the consent of Edwards and Rice who were only employ-
ees. He further argues that the trial court erred in allowing John
Edwards to testify that he had not authorized defendant to
deposit a check dated 10 December 1978 for $5,500 into defend-

ant's personal account and drawn on Estelle Sutton's account on the basis that that check was not the subject of any charge for which defendant was brought to trial. We find these arguments unpersuasive.

> If any president, director, cashier, teller, clerk or agent of any corporation shall embezzle, abstract or willfully misapply any of the moneys, funds or credits of the corporation, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or make any false entry in any book, report or statement of the corporation *with the intent in either case to injure or defraud or to deceive any person*, or if any person shall aid and abet in the doing of any of these things, he shall be punished as a Class G felon.

N.C. Gen. Stat. § 14-254(a) (1981) (emphasis added). Defendant's act of depositing $6,000 in legal fees in his own account rather than that of Kornegay, Rice and Edwards, P.A. is a clear violation of the statute. Defendant was a corporate officer who embezzled funds rightfully belonging to the corporation with the intent to deceive and defraud his associates, John Edwards and Robert Rice. Defendant, John Edwards and Robert Rice had agreed that all legal fees generated by them were property of the corporation and would be distributed on a pro rata basis. Defendant obviously intended to deceive them when he concealed the existence of legal fees due to the corporation. The fact that defendant owned all the stock of the corporation is irrelevant. "So long as the corporation is an entity and owns the money, and that money is withheld or taken and used for non-corporate purposes, . . . there is no escape from the conclusion that there has been a wrongful and intentional *misapplication of corporate funds. . . . State v. Stites*, 5 Utah 2d 101, 104, 297 P. 2d 227, 229 (1956) (defendant owned all but four shares of the corporation's stock). Having organized a corporation and conducted his business through it in order to obtain the benefits and protections of the corporate form defendant may not now ignore the corporate entity and treat corporate funds as his own. *State v. Harris*, 147 Conn. 589, 595, 164 A. 2d 399, 402 (1960). If the stockholders may legally convert all of a corporation's assets to their own use those dealing with the corporation on the faith of its property might be irretrievably in-

jured. *Taylor v. Commonwealth*, 119 Ky. 731, 747, 75 S.W. 244, 249 (1903) (all stockholders concurred in the misappropriation of corporate funds). The truth of this observation is borne out in the case at bar by the fact that at one point defendant's act of appropriating legal fees generated by the corporation left the corporation with insufficient funds to meet its obligations. Only a timely infusion of money obtained from Estelle Sutton by false pretense covered this deficit. Section 14-254(a) of the North Carolina General Statutes makes no exception for corporate agents or officers who own the entire stock of a corporation, and such persons violate the statute if they embezzle or misapply corporate funds with the intent to injure, defraud, or deceive another.

We next turn to defendant's argument that the trial court improperly admitted testimony of John Edwards concerning a 10 December 1978 check for legal services deposited by defendant into defendant's own account. It is true that the check was not the subject of any charge against defendant and defendant's appropriation of it is too remote in time from the crimes charged to be admissible as evidence of motive, opportunity, intent, preparation, plan, etc. *See* N.C. R. Evid. 404(b); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). In light of the fact that John Edwards and Robert Rice gave identical testimony concerning other checks that were properly admitted into evidence, we hold that admission of the testimony concerning the 10 December 1978 check was harmless error.

VI.

Defendant moved pursuant to N.C.G.S. § 15A-1227 to dismiss count XVII of the indictment charging him with the embezzlement of $14,500 "belonging to Kornegay, Rice and Edwards, P.A. and Carolyn Stallings, individually and as guardian ad litem for John J. Stallings, and John J. Stallings, incompetent," on the basis that there is a fatal variance between the allegations charged in the indictment and the evidence offered by the State. Defendant points out that William Sturges, a member of the Charlotte law firm representing Mrs. Stallings, testified that Mrs. Stallings was not a fiduciary or general guardian of John J. Stallings and that defendant as local counsel negotiated the $30,000 settlement of her case with State Farm Insurance Company and

deposited the funds in the trust account of Kornegay, Rice and Edwards, P.A. Defendant argues that this evidence demonstrates that he did not appropriate any funds belonging to Carolyn Stallings, either individually or as guardian ad litem of John J. Stallings. Defendant is apparently relying on the rule that a guardian ad litem has no authority to receive money for a litigant or administer his property. *Hagins v. Redevelopment Comm.*, 275 N.C. 90, 101, 165 S.E. 2d 490, 497 (1969). While defendant's recital of the facts is correct, his application of the law to the facts is flawed.

**[17, 18]**  In an indictment for larceny the State is not limited to alleging ownership in the legal owner but may allege ownership in anyone else who has a special property interest recognized in law. *State v. Greene*, 289 N.C. 578, 584, 223 S.E. 2d 365, 369 (1976). The same rule may properly be applied to indictments alleging embezzlement or misappropriation of the property of another. In this case Carolyn Stallings, as guardian ad litem, received money for John J. Stallings, incompetent, endorsed the checks from State Farm Insurance Company, and authorized their deposit in the trust account of Kornegay, Rice and Edwards, P.A. Mrs. Stallings had been paying her husband's bills, which would give her a claim for reimbursement from the funds deposited in the trust account, and was a "person in loco parentis" as defined by N.C.G.S. § 35-1.7(20). Also, the funds in question were paid by State Farm Insurance Company, the insurer of the Strickland automobile, pursuant to the medical payment and uninsured motorist's provision of the policy. These payments were made at a time when Mrs. Stallings was acting pursuant to a power of attorney from her husband because of his incapacity. These facts are sufficient to create in Carolyn Stallings a special property interest in the $30,000 deposited in the trust account of Kornegay, Rice and Edwards, P.A. The fact that Mrs. Stallings had no interest in the property as guardian ad litem is irrelevant since that allegation in the indictment did not go to prove an essential element of the crime. "Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." *State v. Taylor*, 280 N.C. 273, 276, 185 S.E. 2d 677, 680 (1972). The allegation in the bill of indictment that Mrs. Stallings was an owner of the $30,000 was supported by the evidence. There was no fatal variance between the allegation and proof, and

the trial court properly denied defendant's motion to dismiss count XVII.

Defendant also argues in regard to count XXII that there is a fatal variance between the indictment and the evidence and that the trial court incorrectly stated the charge set out in the indictment in its instructions to the jury. Defendant's argument that the trial court's charge to the jury incorrectly characterizes the charge of obtaining money by false pretense is without basis. The instructions merely paraphrase the language of the indictment and are sufficient to define the offense.

[19] Count XXII of the indictment alleges that the offense of obtaining $21,000 by false pretense took place on or about 27 or 28 April 1982. Defendant contends that the State's proof varies fatally from the indictment because the State has failed to prove when defendant settled the Seals suit with the attorneys for the Seals estate.

In order to prove that defendant obtained the $21,000 from Estelle Sutton by false pretense the State must prove that on 27 April 1982 when defendant represented to Mrs. Sutton that the Seals suit had been settled for $125,000 that this representation was false, that it was calculated and intended to deceive, that Mrs. Sutton was deceived, and that defendant thereby obtained $21,000 from Estelle Sutton. *See State v. Cronin*, 299 N.C. 229, 262 S.E. 2d 277 (1980). It is undisputed that this representation was false, that Mrs. Sutton was deceived by it and that defendant thereby obtained $21,000 from Estelle Sutton. The sole question is whether defendant's statement that the suit had been settled for $125,000 was calculated and intended to deceive Mrs. Sutton. An examination of the evidence demonstrates that it was.

Defendant and Joseph Marion, attorney for the Seals estate, agreed to the final settlement of $104,000 between 20 and 30 April 1982. On 27 April 1982 defendant advised Mrs. Sutton that the Seals suit had been settled for $125,000, and she delivered to him that day a cashier's check made out to him in the amount of $125,000. On 28 April 1982 defendant caused a check to be issued to Joseph Marion, the attorney for the Seals estate, in the amount of $104,000. Defendant delivered this check to Mr. Marion on 3 May 1982 who accepted it in settlement of the case. All the evidence indicates that $104,000 was the only figure ever agreed on

by the parties to settle the Seals suit. Based on this evidence the jury could reasonably infer that the amount of $104,000 had in fact been agreed to on or before 27 April 1982 and that defendant's misrepresentation as to the amount of the settlement had been calculated and intended to deceive Mrs. Sutton. The trial court properly denied defendant's motion to dismiss count XXII of the indictment.

Lastly, defendant contends that the trial court erred in denying his motion to dismiss count XXV of the indictment charging him with malfeasance of a corporate agent in violation of N.C.G.S. § 14-254(a) because there is a fatal variance between the indictment and the proof. It is defendant's position that he did not take any monies of Kornegay, Rice and Edwards, P.A. without the consent of the corporation because he is the sole stockholder and officer of the corporation. We have already held that a person owning all the stock of a corporation violates the law by diverting funds from the corporation in order to injure or deceive any person and we need not consider this issue again. Pursuant to the oral agreement of defendant, Robert Rice, and John Edwards, all legal fees generated by them were the property of the corporation, and defendant could not treat them as his own. This assignment of error is overruled.

## VII.

We next consider defendant's argument that the trial court erred in denying his request for certain instructions in regard to the charges of embezzlement, malfeasance of a corporate agent through misapplying funds, and obtaining money by false pretense. We have reviewed the instructions given by the trial court as well as defendant's proposed instructions and hold that the trial court did not err in denying defendant's request for instructions.

[20] At trial defendant requested the court to instruct the jury that it was to disregard any evidence concerning a fee arrangement between John Edwards, Robert Rice and defendant and any evidence that Edwards or Rice were entitled to shares of stock in the corporation in evaluating the counts of embezzlement and malfeasance of a corporate agent. Defendant contends that this evidence would only be relevant to a charge of appropriation of

partnership funds by a partner to personal use in violation of N.C.G.S. § 14-97. We disagree.

Evidence of the agreement that all legal fees generated by defendant, Edwards and Rice would be property of the corporation to be distributed pro rata was necessary to show what revenue the corporation was entitled to. In order for defendant to be guilty of misappropriating legal fees it was necessary to prove that the corporation was entitled to legal fees generated by the members of the firm. Likewise, it was proper for the jury to consider the evidence that Rice and Edwards were entitled to shares of the corporate stock because it was relevant to the determination of whether defendant had acted with criminal intent to defraud the corporation and Edwards and Rice by the diversion of legal fees and the embezzlement of trust account funds.

[21] Defendant also argues that the trial court erred in failing to instruct the jury that

> [t]he conversion of funds by a person who has been entrusted with them becomes criminal as an embezzlement only by reason of his corrupt intent, and it is as necessary for the State to establish the intent as a fact independent of the conversion as it is to prove the bad intent in a prosecution for larceny as a fact apart from the taking.

This proposed charge is taken from the case of *State v. Cohoon*, 206 N.C. 388, 393, 174 S.E. 91, 93 (1934), and is a correct statement of the law. However, *Cohoon* does not indicate that this instruction is mandatory in cases where defendant is charged with embezzlement or offenses based on an embezzlement. In instructing on the charges of embezzlement of funds and malfeasance of a corporate agent by misapplying funds the trial judge instructed the jury that the State must prove that "defendant wilfully, fraudulently and dishonestly used the money for some purpose other than that for which he received it." This instruction is consistent with the definition of embezzlement set forth in N.C.P.I. — Crim. 218.10 and is adequate to inform the jury that they must find that defendant acted with a corrupt intent when he converted the monies in question. The trial judge did not err in refusing to give the requested instruction.

In regard to the charge of obtaining money by false pretense defendant requested the following instructions: (1) that the State must establish beyond a reasonable doubt that defendant had settled Mrs. Sutton's case with the attorney for Mrs. Seals for $104,000 on or about 14 April 1982; (2) that the State must establish beyond a reasonable doubt that defendant had settled Mrs. Sutton's case with the attorney for Mrs. Seals on or before 27 April 1982 when Mrs. Sutton delivered the check for $125,000 to defendant; and (3) that if the check for $125,000 was obtained from Mrs. Sutton before the settlement of the case, there was no false pretense. Defendant assigns as error the trial court's failure to give these instructions.

[22] It clearly was not error for the trial court to omit defendant's first requested instruction in its charge to the jury. The fact that the indictment alleged that defendant settled Mrs. Sutton's case with the attorneys for the Seals estate on or about 14 April 1982 is immaterial because it is not an essential element of the crime charged. *See Taylor*, 280 N.C. at 276, 185 S.E. 2d at 680. In this case it was only necessary that the State prove that defendant had settled the Seals case on or before 27 April 1982, and the allegation that the settlement was completed on 14 April 1982 is mere surplusage. For that reason no fatal variance between the indictment and the proof would occur if the jury found that the settlement was completed on or before 27 April 1982 rather than on 14 April 1982.

Defendant's proposed instructions two and three for count XXII in substance state that the jury must find defendant innocent of obtaining $21,000 from Estelle Sutton by false pretense unless the State proves that defendant had already settled the Seals case for $104,000 when he received the check for $125,000 from Mrs. Sutton on 27 April 1982. After instructing the jury on the elements of the charge of obtaining money by false pretense, the trial judge proceeded to deliver his final mandate and, among other things, charged the jury that they must find beyond a reasonable doubt that defendant had reached a settlement of the Seals suit in the amount of $104,000 before he told Mrs. Sutton that the suit had been settled for $125,000 and that she should bring him a check in that amount. This is the essence of what defendant requested in his prayer for instruction and is all that he was entitled to.

In his next three assignments of error defendant argues that the trial court failed to charge the jury on the offenses contained in the indictment. These assignments of error are baseless.

Defendant contends that the trial court's instruction on count XVII varied from the bill of indictment and the evidence offered by the State in regard to the ownership of the embezzled funds. Since defendant did not object to this portion of the jury instructions, he may not now assign it as error. N.C. R. App. P. 10(b)(2).

After the trial court had completed its instructions to the jury, defendant requested that the instructions on count XXII be changed by removing the reference to John J. and Carolyn Stallings as owners of the embezzled funds and instructing the jury that it find defendant guilty if it found that he had embezzled funds of Kornegay, Rice and Edwards, P.A. Such an instruction would have been at variance with the facts and the indictment and was clearly erroneous. The trial court properly denied defendant's request to modify the instructions.

Defendant also argues that there was a fatal variance between the allegations and the proof regarding counts XXII and XXV and the court's instructions. "It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment." *State v. Evans and State v. Britton and State v. Hairston,* 279 N.C. 447, 452, 183 S.E. 2d 540, 544 (1971) (quoting *State v. Jackson,* 218 N.C. 373, 11 S.E. 2d 149 (1940)). "The allegation and proof must correspond." *Jackson,* 218 N.C. at 376, 11 S.E. 2d at 151. In regard to counts XXII and XXV, a comparison between the evidence and the language of the indictment and the instructions on these counts reveals that they are entirely consistent with each other. There is no fatal variance between the indictment, the jury instruction, and the proof. These assignments of error are overruled.

In his remaining assignments of error that are not merely formal, defendant argues that it was error for the trial court to admit into evidence documents given to the State by Elnora Whetsell and testimony relating to those documents on the ground that the documents were obtained by the State through an unconstitutional search and seizure. Since we have already held that the documents taken by Mrs. Whetsell were not seized

by the State in violation of defendant's constitutional rights, these assignments of error are without merit and are overruled.

Defendant also assigns as error the trial judge's actions of signing and entering the judgments against him, disbarring him and ordering him to surrender his law license. These assignments of error are purely formal and are without merit.

Defendant received a fair trial free of prejudicial error.

No error.

Justice VAUGHN did not participate in the consideration or decision of this case.