STATE OF NORTH CAROLINA v. PRESTON JACKSON

STATE OF NORTH CAROLINA v. JESSE BRYAN MARSHALL

No. 813SC1025

(Filed 4 May 1982)

1. **Criminal Law § 113.7— aiding and abetting—instruction on shared intent**

   Although the trial court did not specifically instruct the jury that it must find that the defendant shared the criminal intent of the perpetrator in order to convict defendant as an aider and abettor, the trial court's instructions clearly conveyed the concept of a shared felonious intent where the court charged that, to be guilty, defendant "must aid or actively encourage the person committing the crime or in some way communicate to this person his intentions to assist in its commission," and that in order to convict defendant the jury must find that defendant "knowingly advised, instigated, encouraged, or aided [the perpetrator] to commit the embezzlement."

2. **Conspiracy § 6; Embezzlement § 6— conspiracy to embezzle—sufficiency of evidence**

   The evidence was sufficient to support defendant's conviction of conspiracy to embezzle meat from a hospital where it showed that the codefendant solicited a meat company employee to divert from the hospital meat which he was supposed to deliver to the hospital, that defendant on at least one occasion received meat from the employee, and that the employee was paid $100, either by defendant or by the codefendant, for each shipment of meat which he diverted from the hospital.

3. **Embezzlement § 1— elements of the crime—actual or constructive possession of property**

   As used in the embezzlement statute, G.S. 14-90, the words "which shall have come into his possession or under his care" contemplate both actual and constructive possession of the employer's property.

4. **Embezzlement § 6— embezzlement of hospital's meat—constructive possession —sufficiency of evidence**

   The State's evidence was sufficient for the jury to find that defendant had constructive possession of meats belonging to a hospital and that he was guilty of embezzling the meats, although the meats never left the delivery truck which brought them to the hospital, where it tended to show that defendant, while acting as an agent of the hospital and during the course of his employment there, took deliveries of meat intended for the hospital and signed the invoices therefor; defendant arranged with the meat company's truck driver to divert a portion of the meat ordered and intended for the hospital; the driver delivered the entire shipment of meats to the hospital; and defendant signed the invoices for the orders but directed the driver to leave approximately half of the meats on the truck and to take them to a prearranged location.

APPEAL by defendants from *Brown, Judge.* Judgments entered 23 April 1981 in Superior Court, CRAVEN County. Heard in the Court of Appeals 3 March 1982.

Each defendant was charged with one count of embezzlement and conspiracy to embezzle. The jury found them guilty as charged, and defendants appeal from judgments of imprisonment.

*Attorney General Edmisten, by Assistant Attorney General Thomas F. Moffitt, for the State (defendant Jackson's appeal).*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant-appellant Jackson.*

*Attorney General Edmisten, by Assistant Attorney General Barry S. McNeill, for the State (defendant Marshall's appeal).*

*John H. Harmon for defendant-appellant Marshall.*

HILL, Judge.

The State's evidence tends to show that Richard Dale Long, a former employee of the Rusher Meat Company, first delivered meat to the Craven County Hospital in July 1979. Defendant Marshall was employed by the hospital and, as a part of his job, took the deliveries of meat and signed the invoices. Long testified that "during the summer of 1980 [defendant Marshall] asked me if I would like to pick up some extra money . . . holding back some meat . . . at the hospital." Long didn't agree to do this until ten or eleven months later. On about fifteen occasions, Long "held back" approximately one-half of the meat intended for the hospital and delivered it to various places in the Rusher truck. Long testified, "[defendant Marshall] come up and told me what he wanted and he took part of it off the truck and then what he didn't want he put in the corner of the truck and give me a hundred dollars. Then [defendant Marshall] would sign the invoice." The first time, outside the hospital, defendant Marshall introduced defendant Jackson to Long as "the guy that would be getting the meat each week." Long, in the Rusher truck, then followed defendant Jackson up a dirt road where the latter put the meat in his car. He saw defendant Jackson about ten times after this first delivery. Long further testified that he was paid $100, either by defendant Marshall or by defendant Jackson, for

each shipment of meat that he "took somewhere other than the hospital."

Louis William Hanson, also a former employee of the Rusher Meat Company, testified that he diverted meat intended for Craven County Hospital about eight times between August 1977 and August 1978. He stated, "[defendant Marshall] would give me a $100 to do what he wanted me to do with it. He wanted me to take some of it to the hospital and the other part went somewhere else. . . . I used basically the same routine that Ricky Long testified about."

A special agent with the State Bureau of Investigation, Melinda Kaufin, testified that from October 1977 through December 1980, 31,126 pounds of rib eye steaks valued at $119,820.35 were missing from the Craven County Hospital. Defendants presented no evidence.

## DEFENDANT JACKSON'S APPEAL

[1] In his first argument, defendant Jackson argues that the trial judge erred by failing to instruct the jury "that it must find that the defendant shared the criminal intent of the perpetrator in order to convict the defendant as an aider and abettor."

> To constitute one a principal in the second degree, he must not only be actually or constructively present when the crime is committed, but he must aid or abet the actual perpetrator in its commission. (Citations omitted.) A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent of the actual perpetrator (citations omitted), and renders assistance or encouragement to him in the perpetration of the crime. (Citations omitted.) While mere presence cannot constitute aiding and abetting in legal contemplation, a bystander does become a principal in the second degree by his presence at the time and place of a crime where he is present to the knowledge of the actual perpetrator for the purpose of assisting, if necessary, in the commission of the crime, and his presence and purpose do, in fact, encourage the actual perpetrator to commit the crime. (Citations omitted.)

*State v. Kendrick*, 9 N.C. App. 688, 690, 177 S.E. 2d 345, 347 (1970), *quoting State v. Birchfield*, 235 N.C. 410, 413-14, 70 S.E. 2d

5, 7-8 (1952). The intent to aid the perpetrator "does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrator[s]." *State v. Sanders*, 288 N.C. 285, 291, 218 S.E. 2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 886, 47 L.Ed. 2d 102 (1976). *See also State v. Moses*, 52 N.C. App. 412, 279 S.E. 2d 59 (1981).

The trial judge in the present case charged, in part, as follows:

> However, a person is not guilty of a crime merely because he is present at the scene, even though he may silently approve of the crime or secretly intends to assist in the commission. *To be guilty he must aid or actively encourage the person committing the crime or in some way communicate to this person his intentions to assist in its commission.*

> So, I charge that if you find from the evidence and beyond a reasonable doubt that at [sic] the time . . . [defendant Marshall] committed embezzlement, and that [defendant Jackson] was present at the time the crime was committed and directed Richard Dale Long to locations other than the Craven County Hospital where the rib eye loins were off loaded, that *in so doing, [defendant Jackson] knowingly advised, instigated, encouraged, or aided [defendant Marshall] to commit the embezzlement, it would be your duty to return a verdict of guilty as charged.*

(Emphasis added.) We agree with this Court's statement in *State v. Lankford*, 28 N.C. App. 521, 526, 221 S.E. 2d 913, 916 (1976), while addressing the same argument, that "[t]he instructions clearly conveyed the concept of a shared felonious intent although those exact words were not used." Moreover, the evidence shows that defendant Jackson was at the hospital for Long's first diverted delivery and was introduced to Long by defendant Marshall as "the guy that would be getting the meat each week." Long followed defendant Jackson down a dirt road where the latter loaded the meat into his car. Long testified that he saw defendant Jackson about ten times after this first delivery; and, when defendant Marshall didn't pay him, defendant Jackson did pay him for delivering the diverted meat. This evidence is suffi-

cient from which a jury may infer that defendant Jackson shared the criminal intent of defendant Marshall. The trial judge's instructions being adequate, this argument has no merit.

[2] Defendant Jackson's second argument states that there is insufficient evidence of a conspiracy between defendant Marshall and him to embezzle meat from the hospital to sustain a verdict of guilty on that charge.

> A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. [Citation omitted.] To constitute a conspiracy it is not necessary that the parties should have come together and agreed in *express* terms to unite for a common object: " 'A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.' " [Citations omitted.] . . . As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed.

*State v. Bindyke*, 288 N.C. 608, 615-16, 220 S.E. 2d 521, 526 (1975) (emphasis original). *Accord State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978).

The evidence in the present case as recounted for defendant Jackson's first argument is sufficient for the jury to infer "a mutual, implied understanding" between defendant Marshall and him to constitute a conspiracy. Specifically, the offense may be shown by the fact that defendant Marshall solicited Long to divert the meat from the hospital while defendant Jackson, on at least one occasion, received it from Long. Defendant Jackson also was partly responsible for Long's payment. The evidence is not insufficient as a matter of law, as defendant Jackson contends. Therefore, this argument has no merit.

In his final argument, defendant Jackson contends that there is insufficient evidence for the jury to find that he is guilty of embezzlement to sustain a verdict on that charge. As the State notes, the thrust of this argument is that there is insufficient evidence to prove that defendant Jackson shared the criminal intent of defendant Marshall. Based upon our disposition of the foregoing arguments, this contention has no merit.

DEFENDANT MARSHALL'S APPEAL

In his first argument, defendant Marshall contends that the trial judge should have dismissed the charges against him because there is no evidence that he "actually received the meats which were diverted . . .." He argues that "receive," as an element of the offense of embezzlement, must be construed to mean actual, not constructive, receipt. Thus, because the diverted meat never left the Rusher truck, defendant Marshall contends that he never had actual possession.

G.S. 14-90 provides, in part, as follows:

If . . . any agent, consignee, clerk, bailee or servant, . . . shall embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, or shall take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use any . . . goods . . . *which shall have come into his possession or under his care,* he shall be [guilty of a felony]. . . .

(Emphasis added.) Under this statute, four elements must be established: (1) that defendant Marshall was an agent of the hospital; (2) that he had *received* the hospital's property by the terms of his employment; (3) that he *received* the property in the course of his employment; and (4) " 'knowing it was not his own, converted it to his own use.' " *State v. Block,* 245 N.C. 661, 663, 97 S.E. 2d 243, 244 (1957), *quoting State v. Blackley,* 138 N.C. 620, 625-26, 50 S.E. 310, 312 (1905). *Accord State v. McCaskill,* 47 N.C. App. 289, 267 S.E. 2d 331, *disc. rev. denied,* 301 N.C. 101, 273 S.E. 2d 306 (1980).

[3] We agree with the State that in the present case, we must determine whether the statutory language "which shall have come into his possession or under his care" contemplates constructive possession; not whether "receive," as an element of the offense of embezzlement, so contemplates.

Constructive possession of goods exists without actual personal dominion over them, but "with an intent and capability to maintain control and dominion" over them. *State v. Spencer,* 281 N.C. 121, 129, 187 S.E. 2d 779, 784 (1972). *Accord State v. Wells,* 27 N.C. App. 144, 218 S.E. 2d 225 (1975). We construe "which shall have come into his possession or under his care" to contemplate

actual *and* constructive possession. Clearly, "which shall have come into his possession" is actual possession. The phrase "or under his care" indicates the "intent and capability to maintain control and dominion," which is constructive possession. Thus, the possession required by G.S. 14-90 to make out a *prima facie* case of embezzlement may be actual or constructive possession. *See also* 26 Am. Jur. 2d Embezzlement § 15, p. 565 (1966); 29A C.J.S. Embezzlement § 9, p. 19 (1965).

[4] The evidence in the present case shows that defendant Marshall, while acting as an agent of the hospital and during the course of his employment there, took the deliveries of meat intended for the hospital and signed the invoices. He then arranged for the diversion of a portion of the meat to various places. Under these circumstances, defendant Marshall had constructive possession of the meat as it has been defined above, even though none of the diverted meat left the Rusher truck. The remaining elements of the offense of embezzlement clearly are established. Therefore, we find that the evidence was sufficient to withstand defendant Marshall's motion to dismiss this charge. This argument has no merit.

Based upon our disposition of defendant Marshall's first argument, his remaining arguments, alleging the trial judge's failure to define "receive" as an element of the offense of embezzlement and alleging error in the trial judge's instructions to the jury upon actual and constructive possession, likewise are without merit.

For these reasons, in defendants' trial, we find

No error.

Judges WELLS and BECTON concur.