STATE OF NORTH CAROLINA v. JEFFERSON D. JOHNSON, III

No. 914SC987

(Filed 5 January 1993)

**Embezzlement § 4 (NCI4th) — attorney — case settled without client's knowledge — money deposited to attorney's account upon forged signature of client — not embezzlement**

The trial court erred by denying defendant's motion to dismiss an embezzlement charge arising from the settlement of a lawsuit where the indictment charged defendant only with embezzlement; defendant was an attorney; the evidence presented at trial established that defendant's client never authorized settlement of her personal injury claim; the client had never even discussed the possibility of settlement with anyone in defendant's law office; and defendant was able to gain possession of the check only after his secretary falsely represented to State Farm that the client had agreed to settle the claim and sign a release. Even in the light most favorable to the State, the evidence established that defendant's acquisi-

tion of the money was unlawful, thus rendering nonexistent an essential element of embezzlement.

**Am Jur 2d, Embezzlement §§ 1, 15.**

Appeal by defendant from judgment entered 23 May 1991 in Sampson County Superior Court by Judge Thomas W. Ross. Heard in the Court of Appeals 13 November 1992.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles M. Hensey, for the State.*

*Tharrington, Smith & Hargrove, by Roger W. Smith and Douglas E. Kingsbery, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from a judgment entered 23 May 1991, which judgment is based on a jury verdict convicting defendant of embezzlement, N.C.G.S. § 14-90 (1986), a Class H felony with a maximum term of ten years and a presumptive term of three years.

Defendant was indicted on 2 July 1990 for embezzlement of $20,000.00 in United States currency from Lillie Joyce McCoy (McCoy). At trial, the evidence for the State tended to establish that in February, 1987, defendant was an attorney licensed to practice law in North Carolina. McCoy went to defendant's law office in order to obtain legal assistance regarding an automobile accident in which she had been involved. The driver of the other car was insured by State Farm Mutual Insurance Company (State Farm). The accident caused McCoy to receive injuries requiring hospitalization and rendered her automobile a total loss. McCoy chose defendant to represent her because defendant had satisfactorily represented McCoy in a similar case in 1982.

Defendant was not present on the first day McCoy visited defendant's office, so McCoy discussed her case with defendant's secretary/assistant, Gloria Maynard (Maynard). Maynard told McCoy that "she would take my case." McCoy never met with or talked to defendant during the entire time her case was being handled by defendant's office, and, in fact, with one exception, defendant was not present during any of McCoy's visits to the office. Instead, McCoy would discuss the progress of her case with Maynard. On the one occasion when defendant was present in the office, Maynard told McCoy that defendant "was talking on the phone and . . .

[to] be quiet" when she came into the office. Maynard told McCoy not to try to talk to defendant, and McCoy had the impression that Maynard was trying to hide something from defendant about McCoy's case. During the entire time that McCoy's case was being handled by defendant's office, McCoy never discussed settlement with either defendant or Maynard, and never gave either of them the authority to settle or compromise any of her claims.

· During the course of McCoy's case, State Farm ·determined that its insured was at fault in the accident and assigned the claim file to claims adjuster Brenda Matthews (Matthews). On 11 June 1987 and 7 July 1987, Matthews received letters from defendant's law office informing her that it represented McCoy in her claim against State Farm's insured. Thereafter, Matthews had several telephone conversations with Maynard regarding McCoy's case, but recalled speaking with defendant only once, on 2 December 1987.

On 5 October 1987, Matthews agreed to settle McCoy's property damage claim, and mailed a draft from State Farm made payable to "Lillie J. McCoy and [defendant], her attorney" for $800.00, along with a cover letter, to Maynard at defendant's law office. The cover letter stated:

> Gloria, attached is our draft for $800 along with a milage [sic] statement and receipt for settlement of Ms. McCoy's property damage claim. Please send me the title to her 1973 Buick along with the attached forms signed by her. Please give me a call when you are ready to discuss her injury claim.

> Thanks,

> Brenda Matthews, State Farm Insurance

The draft was endorsed in the names of McCoy and defendant and deposited into defendant's business account at First Citizens Bank. McCoy had not authorized a settlement, knew nothing about it, and did not endorse the draft. There was no evidence regarding who signed defendant's name to the draft. The bank records established that whoever forged McCoy's endorsement and deposited the $800.00 draft took $150.00 in cash out from the deposit. Beside the entry on the deposit slip showing the $150.00 cash withdrawal appeared to be the initials "G.M." ·

On 2 December 1987, during a telephone conversation, Matthews agreed to settle McCoy's personal injury claim for $20,000.00.

Matthews could not recall whether these settlement discussions were with Maynard or defendant. After reaching a settlement, Matthews prepared a draft on State Farm's account in the amount of $20,000.00 made payable to "Lillie J. McCoy and [defendant], her attorney." Matthews also prepared a cover letter stating: "Gloria, attached is a draft for $20,000 for settlement of Lillie McCoy's claim. A general release is also attached which includes the property damage payment of $800. Please send title to me with the release as per our discussion. Thank you, Brenda Matthews." Later that day, prior to mailing the release, draft, and cover letter, Matthews received a telephone call from defendant. Defendant asked Matthews not to mail the settlement check because he was going to send someone by Matthews' office to pick it up. Matthews put the letter, release, and draft in an envelope and left it at the front of her office where it was later picked up by defendant's wife.

The $20,000.00 draft was subsequently endorsed in the names of McCoy and defendant, and deposited into defendant's personal account at First Citizens Bank on 3 December 1987. McCoy again had not authorized the settlement of her personal injury claim, knew nothing about it, and had never seen the draft until trial. Defendant told an agent from the Financial Crimes Division of the State Bureau of Investigation that he "believe[d] it was my signature" on the $20,000.00 check. On 21 December 1987, Matthews received the executed release in the mail. The release bore the signature of Gloria Maynard and the forged signature of Lillie McCoy, but did not contain defendant's signature.

Defendant presented no evidence. At the end of the State's evidence defendant made a motion to dismiss the charge against him, which was denied. The jury convicted defendant, and defendant received a three-year suspended sentence and was placed on probation for five years. Defendant appeals.

---

The sole issue presented is whether the State met its burden of presenting substantial evidence that defendant committed the crime of embezzlement in order to survive defendant's motion to dismiss the charge.

A person accused of the statutory crime of embezzlement "must have been entrusted with and received into possession lawfully the personal property of another," specifically, his principal, "and thereafter with felonious intent must have fraudulently converted

the property to his own use." *State v. Griffin*, 239 N.C. 41, 45, 79 S.E.2d 230, 233 (1953); *State v. Kornegay*, 313 N.C. 1, 21-22, 326 S.E.2d 881, 897 (1985); N.C.G.S. § 14-90 (1986). Because of the requirement that the accused must have *lawfully* obtained the personal property *of his principal*, defendant argues that the State failed to meet its burden of producing substantial evidence of embezzlement on the part of defendant. Specifically, defendant argues that the $20,000.00 check from State Farm was obtained by defendant's law office through misrepresentation to State Farm that Lillie McCoy had agreed to settle her personal injury claim, and therefore was not "lawfully obtained." In addition, according to defendant, the check was not the personal property of McCoy, but rather of State Farm, because title never passed to McCoy due to the forged endorsement. Defendant argues that, therefore, the evidence at trial established only that the money was obtained from State Farm by false pretenses.

The indictment charges defendant only with embezzlement. Therefore, because obtaining property by false pretenses is not a lesser included offense of embezzlement, and because a defendant charged only with embezzlement cannot properly be convicted of obtaining property by false pretenses, the relevant question is whether the State presented substantial evidence to support the charge of embezzlement.[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

The evidence presented at trial established that defendant's client, Lillie McCoy, never authorized settlement of her personal injury claim with State Farm. In fact, McCoy had never even discussed the possibility of settlement with anyone in defendant's law office. Defendant was able to gain possession of the $20,000.00

---

1. The general rule is that a defendant may not be convicted of an offense which is not included within the offense charged in the bill of indictment. *State v. Overman*, 269 N.C. 453, 464, 153 S.E.2d 44, 54 (1967), *overruled on other grounds*, *State v. Hickey*, 317 N.C. 457, 346 S.E.2d 646 (1986); N.C.G.S. § 15-170 (1983) (defendant may be convicted of crime charged in indictment or of any lesser included offense). However, by statute, a defendant charged in an indictment with obtaining property by false pretenses may, upon proof at trial that he obtained the property in such a manner as to amount to embezzlement, be convicted of embezzlement. *See* N.C.G.S. § 14-100 (1986). No such statutory authority exists for allowing a defendant to be convicted of false pretenses upon an indictment charging him only with embezzlement.

check only after his secretary falsely represented to Brenda Matthews at State Farm that McCoy had agreed to settle the claim and sign a release. There is no question that, had McCoy agreed to the settlement and release, and after obtaining the check defendant placed the funds in his personal account for his own use, substantial evidence would exist that defendant had "initially . . . acquired lawfully, pursuant to a trust relationship, and then wrongfully converted" the property in question. *State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 166 (1990). However, even in the light most favorable to the State, the evidence established that defendant's acquisition of the money was unlawful, thus rendering nonexistent an essential element of embezzlement. For this reason, the trial court erred in denying defendant's motion to dismiss the charges. It is therefore unnecessary to determine whether the check, at the time that it was placed into defendant's personal account, was the property of defendant's principal (ownership by the principal being another essential element of embezzlement), or whether it remained the property of State Farm.

Based on the foregoing, the trial court's judgment must be

Reversed.

Judges WYNN and WALKER concur.