STATE OF NORTH CAROLINA v. JEFFERSON D. JOHNSON, III

No. 5PA93

(Filed 28 January 1994)

**Embezzlement § 4 (NCI4th) — attorney's settlement of case without client's knowledge — lawful possession of draft — forgery of client's signature — money deposited in attorney's personal account**

The evidence was sufficient to show that defendant attorney came into possession of a draft lawfully so far as his client was concerned and to support defendant's conviction of embezzlement where it tended to show that defendant represented his client on a claim for damages incurred in an automobile accident; defendant told the tortfeasor's insurer that his client would accept the insurer's offer of $20,000 in full payment of her claim, but the client was not advised of the offer; the insurer delivered a draft for $20,000 to defendant with instructions to hold the draft until the client signed the release; the client's signature was forged on both the release and the draft, and the proceeds of the draft were deposited in defendant's personal account; and the client did not receive anything on her claim. Even if defendant may have been guilty of obtaining property by a false pretense as to the insurer when he obtained the draft by a misrepresentation to the insurer that the client would accept the settlement offer, defendant was in possession of the draft as the client's agent, the client owned an interest in the draft in that she could ratify her agent's actions and be entitled to the draft, and

STATE v. JOHNSON

[335 N.C. 509 (1994)]

so far as the client was concerned, defendant was in lawful possession of the draft in which she had a legal interest.

**Am Jur 2d, Embezzlement § 15.**

Justice FRYE concurring.

Justice WHICHARD dissenting.

Justice PARKER joins in this dissenting opinion.

Chief Justice EXUM did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 108 N.C. App. 550, 424 S.E.2d 165 (1993), reversing a judgment entered by Ross, J., at the 23 May 1991 Criminal Session of Superior Court, Sampson County. Heard in the Supreme Court 11 October 1993.

The defendant was tried for embezzlement. The evidence showed that the defendant, an attorney, represented Ms. Lillie Joyce McCoy on a claim for damages incurred in an automobile accident. State Farm Mutual Insurance Company, which was the liability coverage carrier for the vehicle that collided with Ms. McCoy's vehicle, offered to settle the case by paying Ms. McCoy $20,000. The defendant, or someone in his office, told the adjuster for State Farm that Ms. McCoy would accept this sum in full payment of her claim. In fact, Ms. McCoy was not advised of the offer from State Farm.

State Farm delivered a draft for $20,000 to defendant with instructions to hold the draft until Ms. McCoy signed the release, at which time the release was to be returned to State Farm. Ms. McCoy's signature was forged on the draft and it was deposited in the defendant's personal account. Ms. McCoy did not receive anything on her claim. Ms. McCoy's signature was forged on the release, which was delivered to State Farm.

The jury found the defendant guilty as charged. The court imposed a prison sentence which was suspended and the defendant was placed on probation for five years. The Court of Appeals held it was error not to dismiss the charge at the end of the evidence and reversed. We granted the State's petition for discretionary review.

*Michael F. Easley, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State appellant.*

*Tharrington, Smith & Hargrove, by Roger W. Smith and Douglas E. Kingsbery, for defendant-appellee.*

WEBB, Justice.

The defendant argues, and the Court of Appeals agreed, that there was not sufficient evidence to convict the defendant of embezzlement because the evidence did not show the defendant came into possession of the draft lawfully. This is an element which must be proved in order to convict a person of embezzlement. *State v. Speckman*, 326 N.C. 576, 391 S.E.2d 165 (1990); *State v. Griffin*, 239 N.C. 41, 79 S.E.2d 230 (1953).

We believe the evidence showed the defendant came into possession of the draft lawfully so far as Ms. McCoy was concerned and that he wrongfully converted it to his own use. The defendant was the agent of Ms. McCoy with authority to negotiate the settlement of her claim. If he obtained the draft by a misrepresentation to State Farm that Ms. McCoy would accept the offer of settlement, he may have been guilty of obtaining property by a false pretense as to State Farm, but he was still the agent of Ms. McCoy and in possession of the draft as her agent. At that point, Ms. McCoy had the right to ratify the act of her agent and accept the draft. *McCrillis v. Enterprises*, 270 N.C. 637, 155 S.E.2d 281 (1967). The defendant so far had not committed any fraudulent act toward Ms. McCoy. She owned an interest in the draft in that she could, by accepting State Farm's offer, be entitled to the draft. The defendant, so far as Ms. McCoy was concerned, was in lawful possession of the draft in which she had a legal interest. When he converted it to his own use he was guilty of embezzlement. We believe that the relationship between the principal and agent governs as to whether the possession of the property was lawfully gained. Lawful possession does not depend on the relation between the agent and a third party.

The defendant says that because he received the draft from State Farm with instructions to hold it until Ms. McCoy signed the release he was acting as an agent for State Farm, holding the draft in escrow for State Farm until the release was signed. He says the title to the draft remained in State Farm and did not pass to Ms. McCoy. For this reason, he could not have em-

bezzled the draft from Ms. McCoy. Whatever the relationship between the defendant and State Farm as to title to the draft, Ms. McCoy had sufficient property interest in the draft so that the defendant could have embezzled it from her.

For the reasons stated in this opinion, we reverse the Court of Appeals and remand for remand to Superior Court, Sampson County for the reinstatement of the sentence.

REVERSED AND REMANDED.

Chief Justice Exum did not participate in the consideration or decision of this case.

Justice FRYE concurring.

I concur fully in the majority's opinion. I write separately only to emphasize that the State has presented sufficient evidence to support a finding of all of the elements of embezzlement.

To constitute an embezzlement, the property in question initially must be acquired lawfully, pursuant to a trust relationship. *State v. Speckman*, 326 N.C. 576, 391 S.E.2d 165 (1990); *State v. Griffin*, 239 N.C. 41, 79 S.E.2d 230 (1953). Because he had satisfactorily represented her in a similar case in 1982, Ms. McCoy employed defendant in 1987 for the express purpose of collecting money for damages caused by an automobile accident. Thus, by the very terms of his employment, defendant was charged with receiving money on behalf of Ms. McCoy from the tort-feasor's insurance company, State Farm Mutual (hereinafter State Farm). The fact that a settlement was not expressly authorized by Ms. McCoy does not require a finding that the $20,000 draft was acquired unlawfully. It is well settled in the law of agency that when an agent contracts in the name of his principal without authority, upon knowledge of the formation of such a contract, the principal can either ratify the agent's act or disavow it. *See Patterson v. Lynch, Inc.*, 266 N.C. 489, 146 S.E.2d 390 (1966); 2A C.J.S. *Agency* § 67, at 652-54 (1972).

The elements of embezzlement are as follows:

First, that the accused was the agent of the person or corporation alleged, and . . . by the terms of his employment he was charged with receiving the money or property of his prin-

cipal; second, that he did, in fact, receive such money; third, that he received it in the course of his employment; further, that he, knowing it was not his own, converted it to his own use or to the use of some third person, not the true owner.

*State v. Blackley,* 138 N.C. 620, 625-26, 50 S.E. 310, 312 (1905) (citations omitted).

As Ms. McCoy's attorney and agent, defendant was charged with receiving the money or property of his principal; thus, the State has presented sufficient evidence of the first element. The point of contention between the majority and the dissent is whether the second element of embezzlement—that the agent did in fact receive such money or property of his principal—has been satisfied.

The draft was jointly payable to Ms. McCoy and defendant as her attorney along with instructions to hold it until Ms. McCoy signed the release. According to the dissent, Ms. McCoy did not have a property interest in the draft since she "never endorsed the draft, signed the release, or took control of the funds." These acts may be necessary in order to allege "actual ownership" of property but as the dissent correctly points out, the State can also properly allege ownership in a person with a "special property interest." *State v. Carr,* 21 N.C. App. 470, 204 S.E.2d 892 (1974), citing *State v. Smith,* 266 N.C. 747, 147 S.E.2d 165 (1966), and *State v. Law,* 228 N.C. 443, 45 S.E.2d 374 (1947).

Ms. McCoy is indeed a person with a "special property interest" even though she did not expressly authorize this specific settlement of her claim with State Farm. She was not even aware that the draft existed. Nevertheless, as a principal, she had the right to ratify or reject this unauthorized action of her agent, defendant. *See Patterson v. Lynch, Inc.,* 266 N.C. 489, 146 S.E.2d 390; 2A C.J.S. *Agency* § 67, at 652-54 (1972). Under the law of agency:

'It is not necessary . . . that the principal's assent or sanction be given in advance of the performance of the transaction which constitutes the subject-matter or purpose of the agency. If his assent be obtained after the transaction by a confirmation of the assumed relation, it is equally binding and efficacious. . . .'

*Walker Grading & Hauling v. S.R.F. Management Corp.,* 311 N.C. 170, 182, 316 S.E.2d 298, 305 (1984), citing *Trollinger v. Fleer,* 157 N.C. 81, 87, 72 S.E. 795, 797 (1911). It is the majority's position

that this right of ratification is a sufficient property interest to satisfy the ownership element of embezzlement. Conversely, the dissent concludes that "prior to [actual] ratification, the principal retains no benefit from the unauthorized contract and consequently has nothing of value from the agent's transaction." It is my position that the right of ratification itself, notwithstanding whether Ms. McCoy ultimately chose to exercise it or not, is extremely beneficial to her and is a sufficient property interest to satisfy the ownership element of embezzlement.

The record reflects that Ms. McCoy was under continual care of doctors after the accident and that as a result she could not return to work for some time. During this period, Ms. McCoy's source of income was her husband's social security. Because her car was a total loss as a result of the accident, she purchased a new car from an area auto dealership. Ms. McCoy testified that she returned to work even though she had not been released from the doctor because she had bills to pay. Under these circumstances, I am at a loss to see how the dissent concludes that the right to ratify the unauthorized contract with State Farm and accept the draft for $20,000 was of no benefit to Ms. McCoy. She had a right to sign both the release and draft and have the funds represented by the draft paid to her or applied for her benefit. By forging her signature on the release and draft and converting the funds to his own use, defendant deprived Ms. McCoy of this right. In doing so, defendant took a valuable property right from his client, not a "mere possibility" as suggested by the dissenting opinion.

Additionally, the State has presented sufficient evidence of the remaining elements of embezzlement by showing that defendant received the draft in the course of his employment as the attorney representing Ms. McCoy in this matter, and finally that defendant, knowing that the draft was not his, converted it to his own use by depositing it into his personal bank account. Thus, the trial court was correct in entering judgment on the jury verdict finding defendant guilty of embezzlement.

Justice WHICHARD dissenting.

I agree with the Court of Appeals' conclusion that the State did not present substantial evidence to support the charge of embezzlement. Embezzlement occurs when a person has "been entrusted with and received into his possession lawfully the personal

property of another, and thereafter with felonious intent . . . fraudulently convert[s] the property to his own use." *State v. Griffin,* 239 N.C. 41, 45, 79 S.E.2d 230, 233 (1953). The State must present sufficient evidence of each element of the crime charged. *State v. Bates,* 309 N.C. 528, 533, 308 S.E.2d 258, 262 (1983). The elements of embezzlement are:

> First, that the accused was the agent of the person or corporation alleged, and . . . by the terms of his employment he was charged with receiving the money or property of his principal; second, that he did, in fact, receive such money; third, that he received it in the course of his employment; further, that he, knowing it was not his own, converted it to his own use or to the use of some third person, not the true owner.

*State v. Blackley,* 138 N.C. 620, 625-26, 50 S.E. 310, 312 (1905). In this case there was no evidence that Lillie McCoy had a property interest in the proceeds of the draft that defendant received from State Farm and deposited in his personal account. The State's evidence on the second element of the offense thus fails.

The majority has determined that McCoy's right to ratify defendant's act and accept the sum offered in the draft gives her a legal interest in the converted funds sufficient to support the element of ownership in another. The State may allege ownership in "the person having a 'general interest' in the stolen property— that is, the actual owner—or the person with a 'special interest' in the property—that is, the person who had possession and control of it at the time when it was stolen." *State v. Carr,* 21 N.C. App. 470, 472, 204 S.E.2d 892, 894 (1974) (citing *State v. Smith,* 266 N.C. 747, 147 S.E.2d 165 (1966); *State v. Law,* 228 N.C. 443, 45 S.E.2d 374 (1947)). We have stated that this rule, which developed in the context of larceny cases, "may properly be applied to indictments alleging embezzlement . . . of the property of another." *State v. Kornegay,* 313 N.C. 1, 27, 326 S.E.2d 881, 900 (1985).

The right to ratify defendant's act and accept the sum offered in the draft did not give McCoy a general interest in the draft because, as the majority notes, only after accepting State Farm's offer would she be entitled to the proceeds of the draft.

> It is a rule too well established to admit of debate that if a principal, with full knowledge of the material facts, takes and retains the benefits of an unauthorized act of his agent, he thereby ratifies such act, and with the benefits he must

necessarily accept the burdens incident thereto or which natural-
ly result therefrom.

*Snyder v. Freeman,* 300 N.C. 204, 213, 266 S.E.2d 593, 600 (1980)
(quoting *Maxwell v. Proctor & Gamble Distributing Co.,* 204 N.C.
309, 318, 168 S.E. 403, 407 (1933) ). Conversely, prior to ratification,
the principal retains no benefit from the unauthorized contract
and consequently has nothing of value from the agent's transaction.
Therefore, prior to ratification and acceptance, McCoy was not
the actual owner of the funds. She had not yet endorsed the draft
and received the proceeds of the draft into her possession. She
did not even know the draft existed. Even if defendant had delivered
the draft to her, without her endorsement, her claim remained
unpaid. *See Paris v. Builders Corp.,* 244 N.C. 35, 38, 92 S.E.2d
405, 407-08 (1956) ("in the absence of an agreement to the contrary,
the delivery and acceptance of a check is not payment until the
check is paid"). The draft was merely an offer made by State
Farm to McCoy, who had yet to learn of it, much less accept
it. Further, she had not signed the release, which State Farm
made a condition to her receipt of the funds. The Court of Appeals
was correct when it stated:

> There is no question that, had McCoy agreed to the settlement
> and release, and after obtaining the check defendant placed
> the funds in his personal account for his own use, substantial
> evidence would exist that defendant had "initially . . . acquired
> lawfully, pursuant to a trust relationship, and then wrongfully
> converted" the property in question.

*State v. Johnson,* 108 N.C. App. 550, 555, 424 S.E.2d 165, 168 (1993).

Because McCoy's right of ratification was not a general proper-
ty interest, the evidence that she had that right is sufficient to
establish ownership only if that right qualifies as a special property
interest. In larceny cases we have held that the allegation of owner-
ship in a bailee or a custodian of the converted property did not
result in a fatal variance in an indictment because although the
bailee or custodian was not the legal owner, he had a special in-
terest in the property. In making this determination we focused
on the fact that the bailee or custodian had possession or control
of the stolen item. *See State v. Green,* 305 N.C. 463, 474, 290
S.E.2d 625, 632 (1982) (allegation of ownership in person having
custody and control of stolen motorcycle sufficient to support ele-
ment of larceny); *Smith,* 266 N.C. at 749, 147 S.E.2d at 166 (owner-

STATE v. JOHNSON

[335 N.C. 509 (1994)]

ship alleged in bailee sufficient where bailee had custody and control of stolen property); *State v. Bishop*, 98 N.C. 773, 777, 4 S.E. 357, 359 (1887) (ownership alleged in bailee sufficient where bailee had possession of property).

In *Kornegay*, we applied a special property interest analysis to the embezzlement element of ownership in another. *Kornegay*, 313 N.C. at 26-28, 326 S.E.2d at 900. In the indictment the State alleged ownership of the converted funds in Carolyn Stallings. Stallings held a power of attorney as guardian ad litem for her husband, who was incompetent. Her attorney, the defendant, negotiated a settlement of a claim with State Farm Insurance Company on behalf of Stallings as guardian ad litem for her husband, who had been in an accident with State Farm's insured. Stallings endorsed the checks from State Farm, which were paid pursuant to the medical payment and uninsured motorist provisions of the policy. She then authorized their deposit in the law firm's trust account, from which the defendant attorney later withdrew them for his personal use. On those facts we recognized that Stallings had "a special property interest in the [money] deposited in the trust account." *Id.* at 27, 326 S.E.2d at 900. In support of finding a special property interest, we relied on her endorsement of the checks, the fact that she would have a claim for reimbursement for the funds from the trust account because she had been paying her husband's medical bills, and the fact that the payments were made at a time when she had been acting pursuant to a power of attorney from her husband. *Id.* In essence, we analyzed her interest in terms of her control and possession of the funds.

Here, by contrast, McCoy never endorsed the draft, signed the release, or took control of the funds; therefore, her right to ratify defendant's act did not give her a special property interest in the funds. That right only gave her the possibility of accepting State Farm's offer and taking possession and control of the settlement funds. Under our precedents, I do not believe that such a mere possibility qualifies as a special property interest.

To determine that the right to ratify defendant's act is either a general or special property interest sufficient to support the element of ownership in another subverts our prior analyses of property interests in embezzlement and larceny cases. Defendant may, as he contends, be guilty of obtaining property by false

pretenses from State Farm, but the State has failed to prove that he is guilty of embezzlement from McCoy.

I therefore respectfully dissent and vote to affirm the result reached by the Court of Appeals.

Justice PARKER joins in this dissenting opinion.