STATE OF NORTH CAROLINA v. ROBERT DENNIS WEAVER, JR.

No. COA02-1422

(Filed 21 October 2003)

**Embezzlement— aiding and abetting—motion to dismiss—sufficiency of evidence**

The trial court erred by denying defendant's motion to dismiss the charges of conspiracy to embezzle and embezzlement both based on the theory that defendant aided and abetted embezzlement committed by his former wife, because: (1)

defendant cannot be convicted of aiding and abetting embezzlement without proof that an embezzlement was committed; (2) mere access to personal property will not satisfy the requirement that to be properly convicted of embezzlement, the accused must have received the property lawfully in the course of and under the terms of her employment; and (3) although defendant's former wife misappropriated funds, the State failed to prove that she was guilty of embezzlement where there was no evidence from which the jury could find that she ever had lawful possession either of the blank checks that she forged (or of the U.S. currency deposits represented by the checking accounts) or of the signature stamp essential to make the checks negotiable when the evidence was uncontradicted that she had no general authority to write checks and had to obtain express permission regarding each individual check before she could fill it out.

Judge WYNN dissenting.

Appeal by defendant from judgment entered 4 December 2001 by Judge Michael E. Helms in Buncombe County Superior Court. Heard in the Court of Appeals 9 September 2003.

*Attorney General Roy Cooper, by Assistant Attorney General David L. Elliott, for the State.*

*Cloninger, Lindsay, Hensley, & Searson, P.L.L.C., by Stephen P. Lindsay, for defendant-appellant.*

*Amy E. Ray, for defendant-appellant.*

LEVINSON, Judge.

Robert Weaver (defendant) appeals from convictions of conspiracy to embezzle and embezzlement from R & D Plastics, Inc. (R & D), and International Color, LLC (International Color). We reverse.

The relevant facts are summarized as follows: R & D, a small family-owned company, was engaged in the manufacture of injection molded plastic items. R & D was founded in 1979 by Dennis Weaver (Dennis), the company's owner and president. His wife, Shirley Weaver (Shirley), was R & D's financial officer and held the position of secretary/treasurer. Defendant, Dennis and Shirley's son, served as R & D's plant manager for approximately 15 years, starting in the mid 1980's. In 1996, Robert, Dennis, and two other men jointly purchased International Color, a color compounding plant that specialized in

STATE v. WEAVER

[160 N.C. App. 613 (2003)]

tinting plastic materials. During the 1990's, defendant also set up Technicraft, another small business whose employees did finishing work on various plastic items. Technicraft was initially owned by Shirley and Kimberly Weaver (Kimberly); however, Kimberly later purchased Shirley's share and became Technicraft's sole owner.

Kimberly was first employed by R & D in the mid 1980's as a receptionist. In 1986 she and defendant were married; by the time of defendant's trial in 2001 they had divorced. During the course of her twelve year employment at R & D, Kimberly's responsibilities grew to include the maintenance of certain financial records. In 1997 and 1998 her duties included balancing bank statements against the company's computerized financial records and recording monthly reports pertaining to inventory, invoices, and the monthly profit and loss statement. Dennis or Shirley occasionally gave Kimberly permission to fill out an individual check if, for example, a COD delivery arrived while Shirley was not available. However, she had no general check-writing authority, and was not permitted to fill out a check unless she first obtained express authorization from Shirley or Dennis. Kimberly was not generally entrusted with, or permitted to access on her own initiative, either the checkbooks, the loose blank checks, or Shirley's signature stamp.

In 1997 and 1998 Kimberly obtained blank checks for R & D's and International Color's bank accounts. Using Shirley's signature stamp without permission, Kimberly forged over twenty checks totaling approximately $498,000.00. The theft was discovered in May, 1998. In August, 2001, defendant was indicted on twelve counts of embezzlement, each alleging that he aided and abetted Kimberly. Two indictments alleged that defendant aided and abetted Kimberly's embezzlement of International Color; the remainder alleged that he aided and abetted her embezzlement from R & D. He was also charged in a separate indictment with conspiracy to embezzle from R & D and International Color. He received a suspended sentence and was placed on supervised probation. From these convictions, defendant appeals.

---

Defendant raises several issues on appeal. He argues first that the trial court erred by denying his motion to dismiss for insufficiency of the evidence. The indictments issued against defendant, charging him with embezzlement or conspiracy to embezzle, all allege guilt on the theory that he aided and abetted embezzlement committed by his former wife, Kimberly Weaver. Defendant argues on appeal that these

convictions should be reversed because the State failed to prove that the principal (Kimberly) was guilty of embezzlement.

N.C.G.S. § 14-90 (2001) provides in relevant part that:

> If any . . . agent, consignee, clerk, bailee or servant . . . shall embezzle or . . . misapply or convert to his own use, any money, goods or other chattels, bank note, check or order for the payment of money issued by or drawn on any bank . . . or any other valuable security . . . which shall have come into his possession or under his care, he shall be guilty of a felony.

"The crime of embezzlement, unknown to the common law, was created and is defined by statute." *State v. Ross*, 272 N.C. 67, 69, 157 S.E.2d 712, 713 (1967) (citation omitted). "Embezzlement . . . is a statutory offense which is strictly construed." *State v. Bonner*, 91 N.C. App. 424, 427, 371 S.E.2d 773, 775 (1988), *disc. review denied*, 323 N.C. 705, 377 S.E.2d 227 (1989).

Although "there is similarity in some respects between larceny and embezzlement, they are distinct offenses." *State v. Griffin*, 239 N.C. 41, 44, 79 S.E.2d 230, 232 (1953). In *Griffin*, the North Carolina Supreme Court explained the distinction between the two offenses:

> Generally speaking, to constitute larceny there must be a wrongful taking and carrying away of the personal property of another without his consent. . . . It involves a trespass either actual or constructive. . . . The embezzlement statute makes criminal the fraudulent conversion of personal property by one . . . [who was] entrusted with and received into his possession lawfully the personal property of another, and thereafter . . . converted the property to his own use.

*Id.* at 45, 79 S.E.2d at 232-33. Accordingly, "[t]he elements of embezzlement on which the State must offer substantial evidence in order to withstand a motion to dismiss are:

(1) [T]hat the defendant was the agent of the prosecut[ing witness], and

(2) *by the terms of his employment had received property* of his principal;

(3) that he *received it in the course of his employment;* and

(4) knowing it was not his own, converted it to his own.

*State v. Keyes*, 64 N.C. App. 529, 531, 307 S.E.2d 820, 822 (1983) (emphasis added). Thus, our appellate courts have held that larceny, rather than embezzlement, is the proper charge where there is no evidence that the defendant obtained possession of stolen property "in the course of his employment" or "by the terms of his employment." *See, e.g., State v. Whitley*, 208 N.C. 661, 663, 182 S.E. 338, 340 (1935):

> [D]efendant [argues] that the evidence tends to show embezzlement, rather than larceny, . . . he being foreman of the waste-house of the Cannon Mills[.] . . . [T]he fact that [defendant] was . . . foreman of the waste-house did not change his theft of the goods from larceny to embezzlement. The goods were not taken from the waste-house. They were sometimes concealed in the waste-house . . . [b]ut, *[defendant] at no time had lawful possession of the property.*

(emphasis added). Conversely, conviction of embezzlement, rather than larceny, may be upheld when a defendant's possession of property was obtained in the normal course of his employment. In *State v. Lancaster*, 37 N.C. App. 528, 532, 246 S.E.2d 575, 578, *cert. denied*, 295 N.C. 650, 248 S.E.2d 255 (1978), this Court upheld defendant's conviction of embezzling small hardware items from a warehouse where defendant's "job description and specific duties were that he would have total responsibility for the warehouse, including hiring and firing, shipping and receiving[.]" Similarly, in *State v. Buzzelli*, 11 N.C. App. 52, 55, 180 S.E.2d 472, 475, *cert. denied*, 279 N.C. 350, 182 S.E.2d 583 (1971), conviction of embezzlement was upheld where the defendant was a bookkeeper:

> charged with the duty of receiving money of her employer each day, [and] deciding how much should be deposited each day in her employer's bank account. . . . [She] received [$7,820.00] in the course of her employment . . . [and] caused only $7,220.79 thereof to be deposited in her employer's bank account and deposited the remaining $600.00 in her own account[.]

In the present case, defendant does not dispute that Kimberly misappropriated funds from R & D and International Color. He argues, however, that Kimberly did not receive the blank checks that she forged (or the U.S. currency in the checking accounts) "in the course of her employment" or "by the terms of her employment." We conclude the evidence supports defendant's contention in this regard.

The evidence was uncontradicted that Kimberly had no general authority to write checks, and had to obtain express permission regarding each individual check before she could fill it out. Shirley testified that during 1997 and 1998 she began training Kimberly to take over her job, and gave Kimberly limited responsibility for recording some of R & D's and International Color's financial data. She also testified, however, that "checks [we]re supposed to be approved by me. . . . I wrote the checks, and I stamped the checks with my stamp. The stamp was kept in my desk." When questioned by the trial court, Shirley was even more emphatic that Kimberly had no authority to write checks:

COURT: With regard to Kimberly, what authority did she have at R & D and/or International Color with regard to writing checks.

SHIRLEY: *She had no authority to write any checks.*

COURT: But she would call you from time to time to say, "I need to write a check," is that what you said?

SHIRLEY: That's correct.

COURT: And you would give her authority?

SHIRLEY: To write that check.

(emphasis added). In Kimberly's own words:

COURT: And is it your testimony that you had standing authority to write checks for International Color?

KIMBERLY: No, sir, I did not.

COURT: The same as R & D?

KIMBERLY: Correct. I had to have direct permission from either Shirley, and if Shirley was not available, Dennis Weaver.

Thus, Kimberly would have violated the explicit terms of her employment by taking possession of a check or filling it out before obtaining permission, even if her purpose were simply to pay a legitimate bill. In short, Kimberly did not have the right, entitlement, or privilege to write checks or to possess or utilize that which made the checks negotiable, Shirley's signature stamp.[1]

---

1. The dissent notes that Kimberly pled guilty to embezzlement. Assuming *arguendo* that her negotiated plea to the offense of embezzlement has any relevance to this appeal, the record in the instant case is devoid of any details concerning the factual basis utilized for her plea.

The State correctly cites the rule that possession of property may be actual or constructive. *State v. Jackson*, 57 N.C. App. 71, 76, 291 S.E.2d 190, *disc. review denied*, 306 N.C. 389, 294 S.E.2d 216 (1982). However, "[a]lthough defendant's possession of the entrusted property may be actual or constructive, even constructive possession of property requires 'an intent and capability to maintain control and dominion' over it.' " *Bonner*, 91 N.C. App. at 426, 371 S.E.2d at 775 (quoting *State v. Jackson*, 57 N.C. App. at 76, 291 S.E.2d at 194). The defendant in *Bonner* was convicted of violating N.C.G.S. § 14-91 (2001), which makes it a felony for "any . . . person . . . having or holding in trust . . . property and effects of the [State] . . . [to] embezzle or knowingly and willfully misapply or convert the same to his own use[.]" The defendant in *Bonner*, who was director of continuing education at a community college, "had the authority subject to his superiors' approval to hire instructors[.]" The State's evidence tended to show that defendant had "executed contracts with twenty-eight 'bogus' instructors to teach nonexistent adult education classes to fictional students." *Bonner*, 91 N.C. App. at 425, 371 S.E.2d at 774. Defendant's motion to dismiss the charge of embezzlement on the grounds that he never held funds or State property in trust was denied. On appeal this Court held:

> the requirement that defendant misapply funds which he "holds in trust" expresses the requirement distinctive to embezzlement that the defendant "received the property he embezzled in the course of his employment and by virtue of his fiduciary relationship with his principal." . . . Although defendant's possession of the entrusted property may be actual or constructive, even constructive possession of property requires "an intent and capability to maintain control and dominion" over it.

> The State's theory . . . was that defendant's authority to hire [instructors] . . . constituted holding state property in trust by virtue of defendant's alleged "control" of funds[.] . . . [T]he State introduced no evidence to suggest defendant's position ever gave him the capability . . . to "maintain control and dominion" over any state funds at issue.

> We note defendant required his superiors' ultimate approval to hire instructors. More important, the power entrusted to defendant to hire instructors did not in any event maintain control of the state funds CFTI eventually paid those instructors. The State's expansive theory of "constructive possession" fails to distinguish

between being entrusted with constructive possession of property and gaining the necessary possession by deception: only the former constitutes holding state property in trust necessary for embezzlement under Section 14-91. . . .

The cases cited by the State to support defendant's possession are all distinguishable since in each the defendant's employment gave him either actual possession of his principal's property or the capability to maintain control and dominion over it.

*Bonner*, 91 N.C. App. at 426-27, 371 S.E.2d at 774-75 (quoting *State v. Kornegay*, 313 N.C. 1, 22, 326 S.E.2d 881, 897 (1985)).

We find *Bonner* analogous to the instant case. Like the defendant in *Bonner*, Kimberly was required to obtain her superior's approval to execute a check, and was never entrusted with the power to possess or maintain control over checks or the signature stamp necessary to make the checks negotiable. As in *Bonner*, we conclude that the "State's expansive theory of 'constructive possession' fails to distinguish between being entrusted with constructive possession of property and gaining the necessary possession by deception[.]" *Id.*

The State also correctly contends that principles of agency are relevant to our determination of whether a defendant obtained property in the course of her employment. *See State v. Johnson*, 335 N.C. 509, 438 S.E.2d 722 (1994). However, the fact that Kimberly was an agent of R & D or International Color begs the question of whether she acted *within the scope of her agency* when she obtained possession of R & D's and International Color's blank checks. In *Johnson*, cited by the State, the defendant received a settlement check in his capacity as the prosecuting witness's attorney. *Id.* Similarly, in *State v. Jackson*, 57 N.C. App. 71, 291 S.E.2d 190 (1982), also cited by the State, the defendant "while acting as an agent of the hospital and during the course of his employment there, took the deliveries of meat intended for the hospital[.]" *Id.* at 77, 291 S.E.2d at 194.

However, in the instant case, the evidence was undisputed that Kimberly had no authority to possess or write checks under the terms of her employment. On the contrary, the evidence tended to show that Shirley and Dennis did not trust Kimberly with access to their money. Shirley testified that she "just didn't understand how we could be growing so and that we would be short on money" and that consequently "six months before Kim left, I had [] two of the girls in the plant working with me to make sure that Kim and [defendant] were not double or triple billing[.]"

Moreover, Kimberly's testimony about defendant's role in her criminal activity also tends to establish that she did not come into possession of the checks or the signature stamp lawfully in the course of and by the terms of her employment. Kimberly testified that defendant had told her, in effect, to "sneak into mom's desk and steal her stamp." This clearly indicates that she did not have lawful possession of the stamp. Kimberly did not testify that the defendant said, *e.g.*, "next time you're writing checks, just write an extra one" or "next time you're using mom's stamp, use it to stamp this check."

The State stresses that it was by virtue of her employment that Kimberly had "access" to blank checks. However, the law is clear that mere access to personal property will not satisfy the requirement that, to be properly convicted of embezzlement, the defendant must have received the property lawfully, in the course of and under the terms of her employment. In *Keyes*, 64 N.C. App. 529, 307 S.E.2d 820, the defendants took advantage of their status as employees to gain access to certain property. However in *Keyes*, as in the present case:

> The State offered no substantial evidence that either defendant had received the [property] by virtue of their fiduciary capacity. . . . [D]efendants[' supervisor] testified that: I had never given them approval to purchase [items of property]. . . . Nor had I given either of them authority to sell [the property]. . . . The evidence shows that *defendants may have had access to [the property], but there is no evidence that they received [the property] by the terms of their employment.*

*Id.* at 531-32, 307 S.E.2d at 822. On this basis, this Court held:

> There is a difference between having access to property and possessing property in a fiduciary capacity. Embezzlement is the fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of the owner, *i.e.*, in a fiduciary capacity. Larceny is the fraudulent conversion of property by one who has acquired possession of it by trespass. *The fact that a defendant is an employee of a business does not change theft of goods from larceny to embezzlement if the defendant never had lawful possession of the property.*

*Id.* at 532, 307 S.E.2d at 822-23 (emphasis added). We conclude that *Keyes* is functionally indistinguishable from the present case and controls the outcome herein. We conclude that there was no

evidence from which the jury could find that Kimberly ever had lawful possession either of the blank checks that she forged (or of the U.S. currency deposits represented by the checking accounts) or of the signature stamp essential to make the checks negotiable. Consequently, the State failed to prove that Kimberly was guilty of embezzlement.

The defendant cannot be convicted of aiding and abetting embezzlement without proof that an embezzlement was committed. " 'It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. The allegations and the proof must correspond.' " *State v. Rhome*, 120 N.C. App. 278, 298, 462 S.E.2d 656, 670 (1995) (quoting *State v. Muskelly*, 6 N.C. App. 174, 176, 169 S.E.2d 530, 532 (1969)). In the case *sub judice*, the State failed to present sufficient evidence that funds were embezzled. Accordingly, defendant cannot be guilty of aiding and abetting Kimberly's embezzlement.

Our resolution of this issue makes it unnecessary to reach defendant's other arguments. His convictions are

Reversed.

Judge WYNN dissents.

Judge TYSON concurs.

WYNN, Judge dissenting.

Indisputably, Defendant's wife Kimberly Weaver, while serving as a bookkeeper for R&D Plastics and International Color, converted over $500,000.00 from the companies for her and Defendant's use and benefit. With the money, the couple remodeled and landscaped their home and bought horses, hunting dogs, a dog lot with septic tank, a new roof, a new deck with an awning, new lights and vanities, a tile floor, an oak wash stand, an oak wardrobe, an antique desk, a new kitchen, the most expensive Sears refrigerator, a gas Jenn-Aire range, ceramic sinks, wallpaper, French doors, a Persian rug, an antique buffet, a new coffee table, a big-screen TV, a surround sound stereo system, a large TV cabinet, new molding, bunk beds, a 1934 World Series poster, bathroom fixtures, a solid cherry canopied crib, a changing table, and custom curtains.

Notwithstanding Kimberly Weaver's conviction on the charge of embezzlement pursuant to a plea agreement, her testimony on behalf of the State, and clear evidence showing that Defendant assisted in the embezzlement, the majority now concludes that Kimberly Weaver did not embezzle $500,000 from the company, and therefore, Defendant's convictions of embezzlement should be reversed. I respectfully disagree.

Three different corporations, with overlapping ownership, are involved in this case. Dennis Weaver, Defendant's father, was president of R&D Plastics, Inc. and Defendant's mother, Shirley Weaver, was its secretary-treasurer. Defendant's wife, Kimberly Weaver, served as R&D's bookkeeper and Defendant Robert Weaver served as R&D's plant manager. Defendant, his father, and two other men owned shares in International Color, L.L.C. Dennis Weaver served as International Color's registered agent and Kimberly Weaver handled the day to day operations. Kimberly Weaver, the only person in International Color's office, handled receivables, payables and bank deposits. Technicraft was a corporation owned by Kimberly Weaver and she also handled its finances.

Pursuant to her plea, Kimberly Weaver was convicted of embezzling $468,590.63 from R&D and $40,000.00 from International Color. The record shows that she used misprinted R&D checks, which were supposed to be shredded and not used, and bank counter checks. She wrote checks from R&D Plastics to Technicraft, her corporation, totaling $438,562.00. She also wrote checks totaling $30,028.63 to several credit card companies. She used Shirley Weaver's signature stamp to sign the checks.

As R&D's bookkeeper, Kimberly entered the payables, made and recorded bank deposits, opened the bank statements, balanced the accounts, reconciled the bank statements with the general ledger, did the monthly ending and closed monthly accounts. Although Shirley Weaver was responsible for paying the bills, Kimberly would get authorization to write checks for COD shipments or other expenses when necessary. Through these responsibilities and acting under the cover of her position with the company, Defendant's wife was able to facilitate her embezzlement.

Moreover, Kimberly Weaver testified that pursuant to Defendant's instructions, she would use the misprinted checks and Shirley's signature stamp to write a check. When she received money to be deposited in the mail, which was her responsibility to open, she

would deposit the money and then enter the bank deposit as a lesser amount than actually deposited in the company records. She also used International Color's money, over which Kimberly Weaver had complete control, to hide the embezzlement. She wrote two $10,000.00 International Color checks which were payable to R&D. She testified these checks were written to cover up the deposit deficit. By making false record entries and using International Color's money, Kimberly Weaver was able to make the accounts balance in order to have enough money to pay the monthly bills. Indeed, when Shirley Weaver would question why there was not enough money to pay the monthly bills when she knew R&D was making a profit, Kimberly Weaver would "discover" a deposit that did not get recorded.

Under these facts, Kimberly Weaver had constructive possession of R&D and International Color's money. In *State v. Jackson*, 57 N.C. App. 71, 76, 291 S.E.2d 190, 194 (1982), this Court held the possession element of embezzlement may be established by either actual or constructive possession. "Constructive possession of goods exists without actual personal dominion over them, but with an intent and capability to maintain control and dominion over them." *Id*. Through her record maintenance, Kimberly Weaver was aware of the accounts receivable at R&D and International Color. In anticipation of the forthcoming bank deposits, Kimberly Weaver was able to write checks for her (and her husband's) personal use. She would then manipulate the records in order to hide the impermissible and unauthorized transactions. Her actions constituted embezzlement, and she was properly convicted of that crime.

To make out a prima facie case of embezzlement, the State must prove four elements: (1) that defendant was an agent of the employer, (2) that defendant had received the employer's property by the terms of his employment, (3) that he received the property in the course of his employment, and (4) knowing it was not defendant's own, converted it to his own use. *Id*. It is clear Defendant's wife was an agent of R&D and International Color. By the terms of her employment, Kimberly Weaver was required to make bank deposits, maintain accurate financial records, and to write authorized checks when necessary. Through the course of her employment, she received the bank statements, the bank deposits and had access to financial records. Kimberly Weaver also converted R&D's and International Color's money for personal use knowing the money was not her own.

STATE v. WEAVER

[160 N.C. App. 613 (2003)]

The majority holds, however, that Kimberly Weaver did not have access to the checks without permission pursuant to the terms of her employment and therefore the third element is missing. However, Defendant, plant manager for R&D Plastics, instructed Kimberly Weaver to use Shirley Weaver's signature stamp to write checks. Kimberly Weaver testified:

> Robert, [Defendant], came to me and said, "Let's"—There was something that needed to be done or he wanted done on the home, and the credit cards were to their maximum limit, and we did not have the funds to do whichever, I can't remember specifically, and he told me to borrow the money from R&D Plastics. And when I questioned him how, he said, "Well, just go upstairs and take the stamp out of Mom's drawer and just stamp the check and put it into Technicraft.

> . . .

> Q: . . . What would you do? As far as when you would decide it was time to write a check—How would you decide we need more money from R&D Plastics?

> A: Robert Weaver would tell me . . . I would write a check for the amount that he had asked me to.

Moreover, the testimony indicates that Kimberly Weaver used misprinted checks that were to be shredded and not used. The misprinted checks incorrectly listed South Dakota instead of North Carolina as R&D's address. Shirley Weaver testified that all of the checks had not been shredded because no one had time to do it all at the same time. Her testimony established that Kimberly Weaver had access to and lawfully possessed the misprinted checks that she used to embezzle company money.

Furthermore, accepting the majority's holding as correct, Kimberly Weaver would still be guilty of embezzlement of International Color's funds. Both Shirley Weaver and Kimberly Weaver testified that Kimberly Weaver handled International Color's receivables, payables and bank deposits. Thus, she had access to and wrote checks by the terms of and in the course of her employment with International Color. Moreover, Defendant, a co-owner of International Color, directed Kimberly to use the checks.

Under these facts, I would hold the State established Kimberly Weaver embezzled over $500,000 from R&D, Inc. and International

Color, L.L.C. as Kimberly Weaver had constructive possession of the funds. Since the evidence shows conclusively that Defendant assisted Kimberly Weaver in that embezzlement, I would uphold his convictions.